White v. White.

JOHN J. WHITE, EXECUTOR, vs. ARTHUR E. WHITE
AND OTHERS.

A testator gave his "entire property" to his three children, with a provi-
sion that if none of them should leave issue the property should be
divided equally among the children of a brother and sister. The will
then authorized the executors to manage the real estate during the
minority of his children, with power to sell, and stated sundry gifts to
the amount of thirty thousand dollars which he desired to have made,
but left entirely to his heirs, among which was certain real estate that
would have to be conveyed in fee. Held that, taking the whole will
together, it was to be regarded as the intention of the testator to give
the estate to his children in fee, and that the gift to his brother's and
sister's children, in case his own children should die without issue, was
to be taken to refer to their death before his own.

[Argued March 4th—decided March 27th, 1885.]

SUIT for advice as to the construction of a will; brought
to the Superior Court in Litchfield County. Facts found,
and case reserved for advice. The case is sufficiently stated
in the opinion.

*M. W. Seymour*, with whom was *H. H. Knapp*, for the
plaintiff.

*B. McE. Whitlock* of New York, for the defendants.

GRANGER, J. The plaintiff is executor of the will of
James L. White, and asks for a construction of the will.

The part of the will about which there is any question is
as follows: "After all my debts, burial expenses, etc., shall
have been paid, I give and bequeath my entire property,
real and personal, to my children, Eliza Whitlock and
Caroline and James Russell White, one third to each. In
the event of none of my above-named children leaving
issue, then my property shall be divided equally among the
children of my brother, John Jay White, and my sister,
Mary Ann Fitzgerald, each child to receive the same
amount, or, as it is generally expressed, share and share
alike."

The first question is, whether the children of the testator take an absolute estate in fee simple. If this is answered in the affirmative, it disposes of all the other questions made.

It is a well-settled rule that the intention of the testator is first to be ascertained in construing his will, and when discovered must control the construction. In arriving at this intention all parts of the will are to be taken into consideration, and the language used is to be taken in its ordinary sense and import, and if there is any ambiguity or any room for doubt as to the meaning of words, they are to be so interpreted as to effectuate the intention of the testator rather than defeat it. In this respect the rule differs from that in relation to the construction of deeds, where words are to be construed most strongly against the grantor.

The general rules as to the construction of wills are so familiar and well settled that it is unnecessary to cite authorities in support of them; and as to adjudicated cases, Chancellor KENT sensibly says (4 Comm., 534): "The attempt to examine cases at large on this subject would be impracticable from the incalculable number of them, and though we are not to disregard the authority of decisions even as to the interpretation of wills, yet it is certain that the construction of them is so much governed by the language, arrangement and circumstances of each particular instrument, which is usually very unskillfully and very incoherently drawn, that adjudged cases become of less authority and are of more hazardous application than decisions upon any other branch of the law." And the learned chancellor further adds: "The intention of the testator is the first and great object of inquiry, and is admitted to be the polar star by which the courts must steer. Technical rules are subservient to it, and the control which is to be given to it by the rules of law applies not only to the construction of words but to the nature of the estate, and the only limitation upon the intention of the testator is that he shall not attempt to create an estate prohibited by law, as a perpetuity, &c.; and even here courts have gone in some

cases to very great lengths in apologizing for, and ingeniously explaining away, what to an ordinary observer might appear to be a violation of well-established rules and positive enactments of the law."

It does not require the word "heirs" to create a fee; but other words denoting an intention to pass the whole interest of the testator, as a devise of "all my estate," "all my interest," "all my property," "my whole remainder," "all I am worth or own," "all my right," "all my title," or "all I shall die possessed of," and many other expressions of like import, as in this case "my entire *property, both real and personal,*" will carry an estate of inheritance, if there be nothing in the other parts of the will to limit or control the operation of the words. 4 Kent Com., 535, and authorities cited in the notes; Comyn's Dig., *Devise; Doe* v. *Morgan,* 6. Barn. & Cress., 512; Sheppard's Touchstone, by Preston, 439; 2 Preston on Estates, 68, 173.

The first clause in the will of Mr. White clearly and unmistakably indicates that his intention was to give his entire estate equally to his three children named. The language used is susceptible of no other interpretation; it is appropriate, though unprofessional; but no one with common understanding of the signification of plain English words can fail to perceive that his children were the chief objects of his solicitude, and that he meant that they should have and enjoy to the full all his estate.

Is there anything in the other parts of the will that should control the operation of these words, or in any way limit the extent of their meaning? The words indicate that the all-controlling intent of the testator was to give all his estate to his children, and this intent must prevail over every other minor intent, and the clear meaning of the words is not to be controlled by subsequent words of uncertain or doubtful intent. But it is equally manifest that the testator had no intention of creating any other or different estate by the second paragraph in his will than the one created in the first. The whole will, taken together, shows that the only idea the testator had in his mind when he

made provision for his brother's and sister's children was, that in case all his children should be dead at his decease, and no issue of either of them surviving, the estate should go to the devisees named. The idea of creating an estate tail or an estate for life in his children has no foundation, either in any express words in the will or in any fair implication of any words or expression contained in it. On the contrary a different intent is shown, so far as anything is shown, by the subsequent provisions of the will, especially that relating to his executors. In the first place he expresses the wish that none of them be required to give any bonds, and in the next place he gives his executors unlimited power of control over the real estate of his children during their minority, with a power to sell, and, thirdly, he wishes, but leaves it entirely to the decision of his heirs (clearly meaning his children), that certain gifts or bequests be made.

It is hardly supposable that a sane man, if he intended to entail his estate or create simply a life estate in his children, would insert in his will such provisions as these, as he must have known that he was requesting his children to do an act impossible of performance. It is said that the legacies and bequests in this portion of the will amount to some $30,000, among which is the conveyance of real estate in New Jersey to presumably some faithful old servant, and this conveyance is to be made by his children and not by his executors. This, of course, would be impossible for the children to do, if they have only a life estate. And the pecuniary legacies they could pay only from their incomes, if they have only life estates, a supposition that we cannot believe the testator ever entertained.

Where an absolute estate is given to one, and in case of his death to another, the death of the first must happen before that of the testator. The whole tenor of the will, we think, shows that the testator had no thought of giving the estate to the nephews and nieces named unless the event mentioned, the death of all his children without issue, happened before his death. If the event had hap-

pened, then the estate would have vested in the class of heirs named; but it cannot be supposed that the testator contemplated or intended that his estate should remain in the hands of his executors or trustees until it should be determined whether all of his children, who were then minors, should die and none of them leave any issue. Such a construction would involve the estate in perplexity, and defeat the plain intent of the testator. The construction we give to the will would give effect to all parts of the instrument, and be consistent with manifest justice, and is supported by numerous authorities. The devise took effect at the death of the testator. Whatever estate was created thereby vested in the devisees at that time. The children named in the will were all then living. An estate in absolute fee simple vested in them, according to the terms of the will.

The Superior Court is advised to render judgment that the children of the testator take an absolute estate in fee simple.

In this opinion the other judges concurred.