<hr/>

· 54   11
67   254.

CLINTON PHELPS, ADMINISTRATOR, *vs.* ALLIE C. BATES
AND OTHERS.

Hartford District, Jan. T., 1886. PARK, C. J., CARPENTER, PARDEE,
LOOMIS AND GRANGER, JS.

A testator gave certain estate to his son, with a gift over if he should die during minority or without issue. Held, upon a construction of the whole will, that the word "or" should read "and," and that the son's estate became indefeasible on his attaining his majority.

[Argued January 7th—decided February 5th, 1886.]

SUIT for the construction of a will; brought to the Superior Court in Hartford County, and reserved, upon facts found, for the advice of this court. The case is fully stated in the opinion.

*H. C. Robinson* and *E. H. Hyde, Jr.*, for the defendants Allie C. Bates and Hannah S. Bates.

*H. E. Taintor*, for the defendant Ellen A. Cuzner.

*J. P. Andrews*, with whom was *C. H. Briscoe*, for the other defendants.

CARPENTER, J. This is a suit for the construction of a will. The testator gave the bulk of his property to his son, then thirteen years old. The second section of the will reads as follows:—" I give and bequeath to my only son, Allie Carlos Bates, all my estate, both real and personal, of every name, kind or description, except what I hereafter donate in this will to the other legatees." Section three provides for his wife; sections four and five give legacies to two sisters; section six gives a legacy to a brother; section seven provides for a step-son and makes an additional provision for his wife; sections eight and nine provide for two other persons outside of the family. The will then proceeds as follows:—

" In my extreme embarrassment in making provision for unforeseen events or cases of death I am at a loss what to do, but decide upon the following, viz:—In the event of the death of my son Allie C. during his minority, or without family or issue, the bank stock and real estate or home farm (so called) and stock and household goods, &c., to go to                 , and that she, Hannah S., shall share equally with my own family heirs in the division of all of the property which may be left or remain from my son Allie C., viz:—with Anson Bates's heirs, Albert Bates, Flora B. Metcalf's heirs, C. Laura Vandorn, Alfred Bates, and Mindwell D. Smith or the heirs of each (if any) that may be

deceased at that time—seven equal shares in all. I do hereby direct the legacies in this will to be due six months after my decease. To be more explicit :—I wish and design to give to my wife, Hannah S., the use and benefit of my home farm during her life, with the stock, tools, household goods and implements on and belonging to the same, during her life, in the event of the demise of my son, Allie C., during his minority or without issue or heir, before her decease, (Hannah S.,) and she to share equally in fee simple with my six family heirs, in all of the rest of my property given in this will to my son Allie C."

Under this will two questions arise :—1. What estate does the son take? and, 2. What estate does the widow take? In behalf of the son it is claimed that he takes an absolute estate, or, at least, an estate that becomes absolute on his attaining his majority. In behalf of the "family heirs" it is contended that he takes either a life estate, or a defeasible fee; and that the heirs take a remainder, or a gift by way of an executory devise.

In construing this will we must bear in mind that the general leading intent as therein manifested is evidently to give a very large portion of the estate to the son. He is first provided for. The second section gives an estate in fee simple. *White* v. *White*, 52 Conn., 518. That ought not to be cut down to a less estate unless we find a clear intention that it be done in the subsequent parts of the will.

We think it is very clear that the testator did not intend to give his son a mere life estate. There are in this will no less than five distinct life estates. In every instance such an estate is clearly expressed. The testator, or whoever drafted the will, knew what language to use in order to create a life estate. When that was his intention it was not left to inference from words of doubtful construction. A defeasible fee, such as is here contended for, in the minds of most men could not be distinguished from a life estate. It is, in effect only an estate for life, although it may not technically be termed a life estate. The presumption is that

if the testator had intended a defeasible fee he would have created a life estate, and thus have disposed of the remainder as he did in other instances. Instead of that he used appropriate language to give a fee.

The first nine sections dispose of all his property. His first and leading intention, as well as nearly all his minor and subordinate ones, are found in them. If they stood alone no such question as now arises could have been made. What then did the testator intend by that portion of the will following the ninth section? That seems to have been suggested to him by contemplating the possibility of his son's early death. That that might occur before the will could take effect was evidently in his thoughts, as he assumes that his property in that event would go to his own heirs, and provides that his wife shall be admitted upon the same footing with his brothers and sisters. That assumption is inconsistent with the vesting of the property in the son by force of the will; for in that case the property would go to the heirs of his son instead of his own heirs. Hence there is some reason for construing this part of the will as meaning the death of his son during his own life. But if for any reason that is inadmissible, then we think it must mean the death of his son during his minority *and* without heirs or issue. Evidently he had in mind his death during the life of the mother, for the will makes her as one of the heirs. In the seventh section the death of the son during minority is spoken of by itself, and that event is provided for so far as the home farm is concerned. But in the portion following the ninth section, where only the expressions, "or without family or issue," "or without issue or heir," are found, they are coupled with the words "during his minority."

In behalf of the heirs it is contended that the prominent and controlling intention of the testator was to prevent his property from going out of his own family. But we think that intention was contingent and secondary, while his primary and more important intention was to provide liberally for his son. All his property is disposed of before these

expressions are reached. They are used in making some change in the disposition of his property in a given possible contingency. Manifestly he regarded the provision for heirs as of minor importance. Until now they are not named, and here they are not named as devisees or legatees but as heirs. There is no direct express gift to them. It is only by an implication from an assumption that the property, in case it becomes intestate, will go to them as his heirs, that it can be said that they are legatees at all. The leading thought in his mind seems to have been to make an additional provision for his wife, rather than make provision for his brothers and sisters; and this he did by making her as one of them. Incidentally and by implication the provision is for their benefit. So far as that was intended it was a particular intent, the general intent being in favor of the wife. The former cannot prevail over the latter; much less over the general and all-important intent to give his property to his son.

Moreover this was the matter which caused him "extreme embarrassment;" concerning which he was "at a loss what to do." With doubt and hesitation he finally decided "upon the following," &c. To call the part of the will thus produced the important part, containing the general intent, and construe it as prevailing over the intent to provide for his only son, a matter concerning which he was not at a loss, did not hesitate, but was clear and decided, would be absurd. We shall not be justified in inferring from a provision of that character an intention to cut down an estate in fee to a life estate, or, which is in effect nearly the same thing, to a defeasible fee. The consequences of such a construction would be serious. The son would be left with nothing that he could call his own and enjoy except the income; for it will be observed that everything given to the son is subject to this provision. That the testator intended such a result will not be presumed; and it ought not to be produced by construction if the will will admit of any other rational interpretation. To avoid it, and at the same time give effect to the major intent apparent throughout the

whole will to make his son his principal beneficiary, we feel justified in giving to the word " or " the meaning of " and "; so that the will in meaning will read " during his minority and without issue." Such a change gives effect to the intent of the testator, and hence is within the authorities on that subject.

Again; suppose the son had died while under age but leaving issue. Then, if the words are to be taken literally and disjunctively, the issue would not have taken, but the estate would have gone to collateral heirs. Manifestly that would be contrary to the intention of the testator. To effectuate that intention it would be necessary that the words should be taken in a conjunctive sense. And that would require both contingencies to concur in order to give effect to the limitation over. The general rule is, that when an estate depends upon a double contingency, both must concur. Doubtless an estate may be made to depend upon one of two or more alternative contingencies, but the supposition we have made shows that such was not the meaning of the testator in this case.

The case of *Williams* v. *Hubbard*, 2 Root, 191, is identical with this case so far as this question is concerned. An estate was given to a grandson, with this provision:—" In case the grandson dies before he arrives at the age of twenty-one years, or before he has any heirs of his body, then the estate given to him shall go to the said daughters." It was held that the estate vested in the grandson on arriving at the age of twenty-one years, though he died without heirs of his body. The court say:—" The dying without heirs is to be understood to relate to the time before he arrives at the age of twenty-one years."

If the testator intended death during his own life, or death during minority, then the estate becomes indefeasible in the son, at least as soon as he attains his majority.

The gift to the wife in the third section of the will is clear and requires no construction. The provision for her benefit in the seventh section is contingent upon the son's dying during minority, and, as that event can now never

happen, we have no occasion to consider what interest she takes under that section.

The provision found in the concluding portion of the will is inoperative for the reason given above.

The Superior Court is advised to render judgment in accordance with these views.

· In this opinion the other judges concurred.