NICHOLAS TARRANT, TRUSTEE, *vs.* CATHERINE E. BACKUS AND OTHERS.

New London Co., May T., 1893. ANDREWS, C. J., CARPENTER, TOR-
RANCE, FENN and BALDWIN, Js.

A testator having three sons and three daughters, gave to his daughters three sixths of the residue of his estate, and made the following provision for his sons:—" The remaining three sixths I give to my friend *D* and my son-in-law *O* and to their heirs forever, in trust, to be held only for the use and benefit of my three sons, *C, G* and *J*, and their heirs ; and from time to time said trustees may pay out from the net income of said trust estate so much as they may think best for the comfortable support and wishes of my said three sons, but to neither of them at any one time more than a third part of said income, and may, if they think best, from time to time pay to either of my said sons any portion of the

principal, so however that neither shall receive more than in the whole one third part thereof. And if neither of my said sons shall die before me, or before he has received one third part of the principal and interest, then so much of said trust estate shall belong to the legal representatives of said deceased and their heirs, as shall, with what has been received, amount to one third of said trust estate. And inasmuch as my intent is that my said sons may always have a current and continuous support, therefore I have vested said estate, principal and income, in said trustees and their successors, so that my said sons shall not be capable of alienating the same, nor of anticipating the income, nor possess any vested interest which may be conveyed, therefore any instrument by them designed to convey any interest in said estate or its income, shall be void, while in trust as aforesaid." Held—

1. That by "legal representatives" of the sons was meant their executors and administrators.
2. That the legal representatives would take an absolute estate, discharged of the trust.
3. That the sons took a vested interest, and that therefore the bequest did not conflict with the statute against perpetuities.
4. Whether the provision of the will in restraint of alienation by the sons was valid : *Quære*.
5. That if not valid, yet its invalidity would not render the bequest invalid, inasmuch as the intent of the testator, gathered from the whole bequest, was an absolute one to provide for the support of his sons, to which the intent to put a restraint upon their alienation of the interest given them was wholly subordinate.

The will provided that if the trustees named or either of them should decline the trust, die, or become incompetent, the court of probate, with the the advice of the other trustee, should appoint some suitable person in his place. Both trustees had resigned and their places had been filled; one of the new trustees had died and the other had resigned; the present trustee had then been appointed by the court of probate and was now the sole trustee. The will had provided that the trustees named in the will should not be required to give bonds. Held—

1. That the testator intended that there should be two trustees, and that a co-trustee with the present one should be appointed.
2. That the present trustee had no power to act in the appointment, and that it could be made only by the court of probate.
3. That the provision that the original trustees should not be required to give bonds, applied only to them.

[Argued May 31st—decided July 6th, 1893.]

SUIT for the construction of a will; brought to the Superior Court in New London County, and reserved, upon facts found, for the advice of this court. The case is fully stated in the opinion.

*G. Greene, Jr.*, for the plaintiff.

*W. S. Allis*, for Catherine E., Joseph T., Kate E. and Alice L. Backus, and Mary Backus Bryan, defendants.

FENN, J. In this action the plaintiff seeks the advice of this court relative to the construction and validity of certain clauses and provisions in the last will of Joseph Backus, late of Norwich, who died in 1861, leaving surviving him six children, three daughters and three sons. By the fourth section of his will the testator gave to each of his daughters one sixth of his residuary estate, and then provided as follows:—" The remaining three sixths part I give, devise and bequeath to my friend, John L. Devotion, of said Norwich, and to my son in law, Gilbert Osgood, and to their heirs forever, so as to vest in them and their successors in said trust the full and absolute legal and equitable estate, to be by them however so held in trust only for the use and benefit equally of my three sons and their heirs, namely, Charles Alexander Backus, George Tyler Backus and John Edward Backus; and from time to time said trustees may pay out from the net income of said trust estate so much as they may think best for the comfortable support and wishes of my said three sons, but to neither of them at any time more than a third part of said income thus received; and said trustees may, if they deem it best, from time to time and at any time, pay out and deliver over to either of my said three sons any portion of said principal trust estate, so that however neither of them shall receive more than in the whole one third part thereof, the proportion of income thereafter to one who may thus receive of the principal estate to be proportionately diminished; and if either of said three children shall decease before me, or before he has received under the provisions aforesaid one third part of the principal and interest of said trust estate, then so much of said trust estate shall be and belong to the legal representatives of said deceased and their heirs, as shall, with what said deceased one shall have received, amount to one third part of said trust estate, and its net in-

come ; and upon the decease of all said three sons said trustees shall pay and deliver over so much of said trust estate, if any, as shall then be and remain in their hands, to any or all the legal representatives of my said three sons as shall, according to the provisions aforesaid, be entitled to the same ; the intent hereby being that said trust estate and its net income shall be so distributed that each son and his legal representatives after him shall together receive one third part thereof.

" And inasmuch as my intent in creating said trust estate is that my said sons may always have a current and continuous support, therefore I have vested the whole of said estate, principal and interest and income, in said trustees and their successors, to hold or distribute the same at their discretion in conformity with the provisions aforesaid, so that my said sons shall not be capable of alienating the same, nor of anticipating the income, nor possess any vested interest which may be by them conveyed ; therefore any instrument by them designed to convey or dispose of or assign any interest in said estate or its income shall be without efficiency and void while in trust as aforesaid, and said trustees and their successors shall at all times have power to sell and convey any or all of said trust estate during the continuance of the trust, and re-invest the avails in other personal estate, to be by them held, used, and finally disposed of, as the estate so sold would have been if not sold."

Charles A. Backus, one of the sons named in the above section of the will, has died, leaving a widow and four children, having in his lifetime received payments of principal, but to an amount much less than one third of the principal of said trust estate. The first question is in reference to the validity of the provision that, in the event of the death of a child before receiving one third part of the principal and income of the trust fund, " then so much of said trust estate shall be.and belong to the legal representatives of said deceased and their heirs as shall, with what said deceased one shall have received, amount to one third part of said trust estate and its net income."

Whether by the term "legal representatives," as used in the fourth section, the testator meant "those who would take under the statute of distributions," as was held to be the case in *Farnam* v. *Farnam*, 53 Conn., 261, or, as is ordinarily held, the executors and administrators of the deceased children, it must equally follow that if a remainder over is limited to them as purchasers in the will, the same is void, as in manifest contravention of our statute of perpetuities. *Leake* v. *Watson*, 60 Conn., 498; *Beers* v. *Narramore*, 61 id., 13; *Landers* v. *Dell*, id., 189.

If, however, it is held that the sons of the testator took a vested interest, legal or equitable, in fee, using the word "vested" in the sense of transmissible, in the estate, the statute of perpetuities has no application, since in that case there is no remainder or executory devise. Ought we to so hold? In *Farnam* v. *Farnam*, 53 Conn., 278, this court said:—"That courts will incline, in doubtful cases, to construe a devise or legacy as vested rather than contingent, is a familiar and well-settled rule. In some instances courts seem to have gone so far as to say that they will, if possible, construe it as vested. It is enough for our present purpose to say that we ought to give this will that construction if its language will fairly admit of it." Adopting this declaration, let us scrutinize the language used in the will, to discover, as best we may, that controlling element, the expressed intent of the testator.

A careful examination of the section in question, and indeed of the whole instrument, will disclose a manifest purpose on the part of the testator—first, to make a full disposition of his estate and to avoid intestacy as to any portion of it, an intention which the law would indeed infer if possible in any case. *Warner* v. *Willard*, 54 Conn., 470; *Peckham v. Lego*, 57 id., 559. Second, in the disposition of the residuum to deal equally with each of his six children, showing no partiality or preference to any. He gave to each of his three daughters, all of whom were married, and in whose judgment, or in that of their husbands, one of whom he names as a trustee, he appears to have reposed full confidence, one

sixth part of such residuum, absolutely and without restraint. To each of his three sons he appears to have been anxious to give an equal amount as absolutely, save as limited by such restraint upon anticipation or alienation as would in his judgment best effectuate his expressed object in creating the trust estate, that said sons might always "have a current and continuous support." To accomplish this purpose he devised the title to trustees, to be by them held "in trust only for the use and benefit, equally, of my three sons and their heirs," apparently in that connection using the word "heirs" in the same sense in which he had just previously employed it in relation to the daughters' interests given " to them and their heirs forever," namely, as a word " of limitation, not of purchase." He then provided for the payment by the trustees, in their discretion, to each of the sons of sums not to exceed the proportionate share of the net income, for "the comfortable support and wishes " of said sons ; then for the payment, under like conditions, of the principal ; and then for the disposition of principal or income, belonging to the share of any son, remaining undisposed of at the death, either in the lifetime of the testator or afterwards, of such son, declaring that the same should " be and belong to the legal representatives of said deceased, and their heirs, * * * the intent hereby being that said trust estate and its net income shall be so distributed that each son and his legal representatives after him shall together receive one third part thereof." It will be noticed that not only do the provisions to which we have just referred, as also those which provide that conveyances by the sons, during the continuance of the trust, either of interest in the estate or of income, shall be without efficiency, and those by the trustees valid, indicate pretty clearly the purpose of the testator, but, in order that such purpose may by no possibility fail to be clearly apprehended, he twice makes express and specific declarations concerning his intent, that each son and his legal representatives after him shall receive his proportionate one third of the trust, or one sixth of the residuary estate, and that there was a trust created instead of an outright gift made, in order to best insure a

"current and continuous support" for each of the sons during their lives. There is here, therefore, manifestly no scheme to accumulate or even preserve an estate during the lives of his children, for distribution in fee among the descendants of such children. Indeed, in whatever sense the words " legal representatives " are construed, not only those not in being, or the immediate issue of those in being, at the death of the testator, might take under that designation, and hence the invalidity of any gift to them by reason of the statute of perpetuities, but also those might take beneficially in whom the testator could have had little interest and appears to have manifested none—those also whose taking as purchasers, if allowable, would have violated the very scheme for equality which the testator so expressly asserted. We think, therefore, that it is sufficiently clear, and ought to be held, that the intention of the testator was that each of his three sons should take a vested interest in fee in one sixth of his residuary estate, an interest which, for its preservation, looking solely to the support and comfort of such children, the testator sought, whether effectually or otherwise, to render inalienable during the lives of his sons, by the intervention of trustees, and the other provisions made, but that he intended to leave such estate transmissible at death as the estate or interest of each deceased son respectively, to " the legal representatives of said deceased and their heirs," and that when any property came to such representatives by payment from the trustees, the testator intended and expected that it would come to them, not as his gift to them, but as property belonging beneficially to the son of the testator, represented by them, they as such representatives receiving, at the death of the son, such balance, if any, as had not been paid to him in his lifetime by the trustees. If now to the term " legal representatives " we attach the ordinary meaning of executors and administrators, any other construction than the one above would impute to the testator the improbable intent to give to the unknown devisees of the sons an interest in his estate as purchasers which he has withheld from his children, thus preferring the uncertain objects of their bounty to the nat-

ural objects of his own. If it were necessary, in order to avoid this improbability, to construe the term "legal representatives" as meaning next of kin, or those who would take under the statute of distributions, as is sometimes done, and was in the case of *Farnam* v. *Farnam*, (*supra*,) we should not hesitate to do so. But it is not necessary, since the improbability only arises upon a construction of the will which, upon other grounds stated, we think ought not to be given to it. And construing the will as we have, the ordinary construction of the term "legal representatives" becomes confirmatory of such construction of the will. Nor do we see any reason why the term should not be so construed, that is, as meaning executors and administrators. There is nothing in the expressed general intent of the testator, in creating the trust estate, to which such construction is counter; and the restraint upon alienation and anticipation appears to have been inserted with direct reference to instruments designed to convey, dispose of, or assign, interests in the estate or its income, which operating in the lifetime of the son making such instruments would thereby tend to destroy or impair the "current and continuous support" of such son for life. Indeed the language used in that respect seems definite and certain, the instruments of conveyance are to be void and without efficiency "while in trust as aforesaid," that is to say, during the lifetime of the sons respectively.

We therefore conclude that the testator did not intend to restrain the devisability of the respective interests of the sons, and that by the term "legal representatives" the ordinary meaning of executors and administrators was intended.

Having thus determined the intention of the testator, we next inquire whether such intention is valid and can be effectuated. It is not our purpose to discuss the question, which has not been argued before us, whether, upon the assumption that notwithstanding the restraints upon alienation and anticipation which the testator sought to impose upon the estates of his sons such estates are valid and vest an interest in them, the restraints themselves are also valid, wholly or in part. Such decision was not asked, and to volunteer it

might do an injustice to interests unheard and indeed unrepresented before us. Our question is solely, on this branch of the case, whether the testator's intention to create a transmissible and absolute interest in the sons is effective, notwithstanding such attempted restraint. And this question may be considered as twofold;—first, whether, assuming that both intentions to give and to restrict cannot be carried out, the former or the latter should prevail; and second, if the former, namely the intention to give, should be preferred, whether there is anything in the imposition of the restriction which in fact renders the gift ineffectual.

In *Easterly* v. *Keney*, 36 Conn., 18, the court said:—" If an equitable or legal interest in land is devised, and it becomes vested in the devisee, it is subject to all the incidents of ownership in his hands, and may be taken by creditors as freely as any other property of the debtor, although the testator may have strongly expressed his intent to the contrary. But the intent of a testator in this respect is an important consideration in a doubtful case in determining whether in fact an interest in land has been devised." That is to say, the question which, in reference to this case, we have to consider, is what the controlling intention of the testator was. It is said in Littleton's Tenures, sect. 360, Coke Lit., 222 *b* :—" Also if a feoffment be made upon this condition, that the feoffee shall not alien the land to any, this condition is void, because when a man is enfeoffed of lands or tenements he hath power to alien them to any person by the law. For if such conditions should be good, then the condition shall oust him of all the power which the law gives him, which should be against reason, and therefore such a condition is void." See also Washburn's Real Prop., Vol. 1, p. 54 ; *Blackstone Bank* v. *Davis*, 21 Pick., 43 ; Gray on Perpetuities, §§ 119, 120. In all cases where the restraint is void the interest is nevertheless recognized as valid. It would seem therefore that in the case before us, whatever may be the effect of the restraint, it will not render the gift to which it is attached inoperative, provided it was the intention of the testator, in all events, to make the gift.

But coming now to the other branch of the inquiry, if the intention to restrain the alienation of interest or anticipation of income can only be deemed effectual by holding that no present interest in fee passed to or vested in the sons, ought it, in order to effectuate that intent, to be so held? It may forcibly be urged that this was the controlling intent in the testator's mind. It was the one which he expressly declared. In order to accomplish it he went so far as to say that he gave the property to the trustees "and to their heirs forever;" and "so as to vest in them and their successors in said trust the full and absolute legal and equitable estate." Nevertheless this strong language, and other expressions which might be noticed, are as much opposed to the idea of an estate by executory devise in the legal representatives of the sons, as to that of a present estate in fee in the sons themselves, and is limited, if not contradicted, by the other language used in relation to the trust upon which the property is to be held only. And the intent itself appears to have arisen solely from a desire to make the gift to or for the benefit of the sons as truly and as permanently serviceable and beneficial to them as possible. So that while it may be said that the main intent was to give the property to the sons, and that, subordinate to that intent, was another to give it in such a way as to make it inalienable in their hands, it could hardly on the other hand be asserted that since the testator preferred, in order to accomplish that which he deemed to be for the best interests of his sons, that the property should be inalienable in their hands, he should also be held to have chosen, unless it could be made so, that they should take nothing from his bounty. It seems to us that we ought to hold that the testator's intention to give his sons a proportionate interest in fee in his estate was absolute, and not dependent or conditional upon the validity, which indeed probably he never doubted, of the restraints imposed by him upon alienation, and that such intention is valid. It was said by this court in *Austin* v. *Bristol*, 40 Conn., 132:—"It is true that in regard to the construction of wills, former cases, unless *ad idem*, are of small account, but in respect to clauses of frequent

occurrence in wills, it is important that there should be uni-
formity of construction." Adopting this view as to the im-
portance of uniformity, it will not be inappropriate to refer
to some previous cases in this jurisdiction which seem directly
to bear upon the question which we have considered. In
*Leavitt* v. *Beirne*, 21 Conn., 1, a testator, possessed of a large
estate, divided it equally among his children, subject to cer-
tain "provisions and conditions," one of which was stated
thus—" All and every of the property given to my daughter,
Mary D. Steenbergen, is for the exclusive use of her and her
children, free from the debts and control of her husband; and,
to secure the same to their unimpaired enjoyment, I hereby
give the same to my sons, George P. Beirne and Oliver Beirne,
with full authority to apply the property as to them shall
seem best, for their exclusive benefit during the life of my
said daughter, and after her decease to divide the same equally
among her children." The question was whether the prop-
erty was so given beneficially to the daughter as to be subject
to her control and liable to be bound by her contracts, and
although the majority of the court held that it was not, the
opinion proceeds upon the ground, (thereby incurring the
criticism of Gray in his treatise upon Restraints upon Aliena-
tion,) that under the circumstances the restraint would be
valid, and fully assumes that the entire equitable and trans-
missible fee is·in the daughter, as also does the dissenting
opinion of ELLSWORTH, J., concurred in by CHURCH, C. J.
And in the case of *Watson* v. *Cleveland*, 21 Conn., 542, refer-
ring to this case of *Beirne* v. *Leavitt*, it was said that the tes-
tator "made his trustees, in a measure, conservators over his
daughter and her family, and it was on this ground alone
that this court decided that the trustees might withhold the
funds and refuse payment of her debts."

In *Landon* v. *Moore*, 45 Conn., 422, a testator made the
following bequest:—" I give to my daughter, Mary Isabel,
wife of Charles A. Moore, all my estate both real and per-
sonal, to hold the same to her and her heirs, to her sole and
separate use, free from the interference and control of her
husband, at her death to go immediately to her children, if

she have children at that time. It is my will and direction that in case of her husband surviving her, he shall not have any use or improvement of the same, but that it be for her children." The question was whether the daughter took an estate in fee or a life estate, and it was held that she took in fee.

In *Hughes* v. *Knowlton*, 37 Conn., 429, a testator devised real estate to be divided equally between two daughters, add-ing—" Meaning and intending that all the children that have been or may be born of their bodies shall become heirs to the same." It was held that the daughters took a fee. The court, FOSTER, J., said, (p. 432,)—" Heirs at law are not to be disin-herited without a clear intention to do so, and that intention must be carried out by actually vesting the estate elsewhere." See also *McKenzie's Appeal from Probate*, 41 Conn., 607.

We are next asked whether, if the provision be valid, the "legal representatives" take an absolute estate, discharged of said trust, or whether the trust continues till the death of the last survivor of the testator's three sons? We think the legal representatives, the executor in case of a will, or the administrator in case of intestacy, in trust for the cred-itors, widow and next of kin, (following the requirements of the statute of distributions,) of a deceased son, take deriva-tively from such son an absolute estate in the unexpended balance of the principal and income of one third of the trust estate; and that as to such third the trust determined at the death of such son. We not only see no purpose or object in longer continuing the trust in reference to such portion, but we so construe the language used by the testator, that upon the death of either of said three children so much of said trust estate should be and belong to such legal representa-tives—language with which the after statement that "upon the decease of all said three sons said trustees shall pay and deliver over so much of said trust estate, if any, as shall then be and remain in their hands, to any or all the legal representatives of my said three sons as shall according to the provisions aforesaid be entitled to the same," is not in-consistent, even if it be considered inapt.

In view of the conclusions which we have reached it becomes unnecessary to answer some of the questions presented. One further however remains to be considered. The will also provides that should the trustees named, " or either of them, refuse to execute said trust, decease, or in any way become incompetent to execute it before the determination of the same, the court of probate for the district of Norwich, with the advice of the other trustee, is requested to appoint some suitable person in place of such deceased or incompetent one, and the question of incompetency shall be determined by said court and said other trustee." It appears by the record that both of the trustees originally named duly accepted the trust ; that afterward they severally resigned and their places were filled ; that one of the new trustees died and the other resigned, and that the present plaintiff was thereupon appointed, and is now the sole trustee. We are asked " whether the plaintiff has power, as sole trustee, to perform all the duties and execute all the powers given to the trustees in the will, or whether the appointment by the court of probate for the district of Norwich of a co-trustee is necessary. The answer to this question depends upon the intention of the testator. Perry on Trusts, §§ 286, 493. The testator placed special trust and confidence in the trustees named by him. One of them was his " friend," the other his son-in-law. He provided that they should not be required to give bonds. Neither this provision nor the personal confidence would extend to their successors. If either of them failed to accept or ceased to act, his place was to be filled and the appointment was to be made upon the advice of the remaining trustee. The language of the will in reference to such advice is limited to a single instance, that of the remaining one of the original trustees, concerning the appointment of a co-trustee. It does not extend to the trustee so appointed if in his turn he becomes sole. Nor do we see any reason to. believe the testator intended that it should be so extended. We, however, perceive some grounds to think that the testator did desire that there should continue to be two trustees. His direction for the filling the

vacancy in the first instance, and his use of the plural in every reference to their powers, is some indication of such intention. All the parties before us unite in the claim of such construction, and it seems reasonable, and cannot, at any rate in our opinion, be injurious to give it.

The Superior Court is therefore advised,—

*First.* That the provisions in the fourth section of the will in question, that " if either of said three children shall decease before he has received, under the provisions aforesaid, one third part of the principal and interest of said trust estate, then so much of said trust shall be and belong to the legal representatives of said deceased and their heirs, as shall, with what said deceased one shall have received, amount to one third part of said trust estate, and its net income," is valid, because by the terms of the will it belongs to said legal representatives, by virtue of their right of representation of the deceased son of the testator.

*Second.* That the meaning of the expression " legal representatives," as used in the will, is the executors or administrators of the deceased son.

*Third.* That such legal representatives take an absolute estate discharged of said trust, and that the trust as to their proportionate share does not continue till the death of the last survivor of the testator's said three sons.

*Fourth.* That the court of probate for the district of Norwich should appoint a co-trustee to act with the plaintiff.

In this opinion the other judges concurred.