WILLIAM B. BURR, ADMINISTRATOR C. T. A., *vs.*
ELIZABETH TIERNEY ET ALS.

Third Judicial District, New Haven, June Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, JS.

Words of inheritance are not necessary to carry a fee where the estate
is created by will. The use of either "give" or "devise" is suf-
ficient for that purpose.

An express and positive devise in fee cannot be cut down to an inferior
estate by a subsequent clause in a will, unless that be equally ex-
press and positive; a mere implication is not enough.

The rule is well established that courts will endeavor to avoid a con-
struction which will result in partial intestacy, against the plain
intent of a testator.

A testator, who died in 1886, after giving his wife a life interest in cer-
tain real estate, gave that property on her death to his son E, "his
heirs and assigns forever." In the three clauses following (fourth,
fifth and sixth) he gave separate pieces of real estate to each of
three children, and in the seventh clause ordered and directed his
executor that if J, one of the aforesaid three, "continues his in-
temperate habits none of the above described share of my estate
shall be set to him, but the sum of five dollars be all he shall re-
ceive from my estate." The eighth clause directed that "none of
the property bequeathed shall be at any time mortgaged or sold,
but shall after the decease of my said children, go to their heirs."
In a suit to construe the will it was *held:*—

1. That the intention of the testator manifested in these clauses was
to give to each of his children an estate in fee in the real property
designated for each.

2. That the language of the eighth clause, while of doubtful meaning,
did not clearly indicate an intent upon the part of the testator
to cut down his devises in fee to gifts of lesser estate.

3. That even if the testator could be said to have harbored such pur-
pose, it could not be accomplished by attempting to restrain or for-
bid alienation by the donee in fee, since such a condition would be
repugnant to the gift and be treated as null and void; and further-
more, that if the gifts to the children were to be regarded as life
estates only and the remainders as passing to their "heirs" by
virtue of the eighth clause, such a construction would contravene
the statute against perpetuities which was in force when the will
took effect (1886), and was therefore to be avoided if possible.

4. That the provision of the seventh clause respecting what should be

done in case J (who died in 1916 without any action by the executor) continued his intemperate habits, was void for uncertainty; while those who would now assert the validity of this clause and claim any right under it, might justly be said to have waived or lost such right by their many years' acquiescence in J's possession and ownership.

Argued June 13th—decided October 5th, 1923.

SUIT to determine the construction and validity of the will of Michael Murphy of Fairfield, deceased, brought to and reserved by the Superior Court in Fairfield County, *Wolfe, J.*, upon an agreed statement of facts, for the advice of this court.

Michael Murphy died March 14th, 1886, leaving a will executed January 9th, 1885, by the second and third clauses of which he gave a house and lands to his wife for life, and after her death to his son Edward, "his heirs and assigns forever." By the fourth clause he gave other land and buildings to his son Michael junior; by the fifth clause, another house and land to his daughter Mary; and by the sixth clause, other lands and buildings to his son James. The seventh clause of his will is as follows: "7th. I order and direct my Executor that if the said James continues his intemperate habits that none of the above described share of my estate shall be set to him, but the sum of five (5) dollars, be all he shall receive from my Estate." The eighth clause reads: "8th. I order and direct that none of the property bequeathed shall be at any time mortgaged or sold, but shall after the decease of my said children, go to their heirs."

He appointed his wife executrix, and died in possession of all the property mentioned in his will. His widow qualified as executrix and died June 28th, 1895, before she had completed the administration of the estate. No person was appointed to continue the administration until September 21st, 1901, when an ad-

ministrator was appointed, who died February 21st, 1904, without completing his duties. No administrator was appointed afterward until all the testator's children had died. On January 24th, 1917, the ·plaintiff was appointed and is acting, and has now in his possession only the property described in the fourth and fifth clauses of the will. The testator's son Edward died intestate in 1910, leaving a widow and children. The testator's son Michael junior died intestate in 1908, leaving no widow nor child. His daughter Mary died in 1905, leaving no husband nor child surviving, but a will in which she directed that all her property be sold and gave the proceeds to a church society. The testator's son James, in April, 1915, gave to his niece, the defendant Elizabeth Tierney, a warranty deed of the property described in the sixth clause of the will, subject to an agreement to provide him with a home and support during his life. He died September 16th, 1915, intestate leaving a widow but no child. No entry appears in the records of the town of Fairfield finding that James Murphy did or did not continue his intemperate habits, and this matter is still in dispute among the defendants.

*Howard L. Schaff*, for the plaintiff.

*David S. Day*, for James Dunn.

*Thomas M. Cullinan*, for Elizabeth Tierney.

*Lorin W. Willis*, for Marion and Christine Murphy.

*William A. Kinsella*, for estate of Mary E. Hayes.

*James C. Shannon*, for Ella C. Brady *et al.*

*John J. Corr*, for Mary A. Shanley.

*Henry P. Lyons*, for Annie L. Sherwood.

BURPEE, J.   The fundamental question of law pre-
sented by this reservation for the advice of this court
is what estate did each of the testator's children take
in the portion given to each by his will.   If the answer
be that each took an estate in fee simple, it will be
decisive of all the questions stated for determination.

The rules governing the construction of wills are
so well settled and familiar that it is unnecessary to
repeat them specifically.   Chancellor Kent's brief
statement is applicable to the present case: "The in-
tention of the testator is the first and great object of
inquiry; and to this object technical rules are, to a cer-
tain extent, made subservient.   The intention of the
testator to be collected from the whole will, is to govern,
provided it be not unlawful, or inconsistent with the
rules of law.   The control which is given to the inten-
tion by the rules of law is to be understood to apply,
not to the construction of words, but to the nature of
the estate—to such general regulations in respect to the
estate as the law will not permit; as, for instance, to
create an estate tail, to establish a perpetuity, . . .
or to annex a condition that the devisee in fee shall
not alien.   To allow the testator to interfere with the
established rules of law, would be to permit every man
to make a law for himself, and disturb the metes and
bounds of property."   4 Kent's Commentaries (14th
Ed.) * 535.

In the second clause of this will it appears that the
testator understood that he had the power to limit an
estate he wished to give to an estate for life, and that he
knew what language should be used to create such an
estate.   In apt words he clearly expressed his intention
to give his wife only a life estate in the particular
property described; he did not leave his intention to
be inferred from words of doubtful construction.   It
appears in the third clause that he also understood

that he had the right to say what should become of this property after his wife's death; and in simple words he clearly declared his intention that it should go to his son Edward, "his heirs and assigns forever." He used no words of limitation or condition of any kind. He made known his intention in appropriate terms commonly used to create an estate in fee. No good reason appears or has been suggested why he used these simple terms if he intended to give his son only a life estate, instead of the same explicit terms he had just before used when he evidently intended to give a life estate to his wife. In the fourth, fifth and sixth clauses of his will the testator provided for his other children, and gave and devised to each a designated portion of his property in terms that neither express nor imply an estate for life only. It is true that in these clauses no words of inheritance were used; but such words are not necessary to carry the fee where the estate is created by will. The words "give and devise," or either of them, would be held sufficient. *Houghton* v. *Brantingham,* 86 Conn. 630, 639, 86 Atl. 664; *White* v. *White,* 52 Conn. 518; *Phelps* v. *Bates,* 54 Conn. 11, 13, 5 Atl. 301; 4 Kent's Commentaries (14th Ed.) * 535. Considering the express terms of these clauses of the will, they appear plainly to be susceptible of no other rational interpretation than that the testator's intention was to give to each of his children an estate in fee in the real property he designated for each. That estate should not be cut down to a less estate unless, considering the other parts of the will, we discover a clear intention that that should be done. *Phelps* v. *Bates,* 54 Conn. 11, 13, 5 Atl. 301. "It is a sound rule of construction that an express and positive devise in fee cannot be cut down to an inferior estate by a subsequent clause in the will, unless that be equally express and positive. A mere implication is not enough."

*Fanning* v. *Main*, 77 Conn. 94, 99, 58 Atl. 472. "The subsequent language to have this effect must not be of doubtful meaning or uncertain in its indication of the testator's intent." *Clark* v. *Baker*, 91 Conn. 663, 666, 101 Atl. 9; *Meriden Trust & Safe Deposit Co.* v. *Squire*, 92 Conn. 440, 103 Atl. 269. It is claimed by some of the parties in this reservation that the eighth clause of this will has such effect. But its language does not positively and decisively express such an intention. Looking at the will as a whole, it is evident that the paramount purpose of the testator was to make a final disposition of his entire estate, and to give it all to his children in portions which he selected and carefully described, and each of which he speaks of as a share. He used no words which even suggest a life estate except when he manifestly meant to create one, and then he made it clear that he knew how to express his intention to do so. He does not mention any remainder of this estate or of any estate created by his will, or the contingency of the death of any child leaving a child or no child. The language of the eighth clause apparently indicates that he had in mind the fact that in the previous clauses he had given to each of his children an estate which the child would be able to encumber or to dispose of entirely, so that his or her heirs could not succeed to full possession and ownership. It may be a fair inference that he meant to order and direct his children not to do either of these things, trusting to their filial respect to secure obedience to his express wishes. It may also be a reasonable deduction that he intended to provide against waste and loss of the estate which he had given to each child, and his words convey at least an implication that he wished the shares to pass directly from his children to their heirs, and not from him as his gift. The language he used in this clause, thus variously interpreted by

different persons in interest, is evidently of doubtful meaning. But certainly there cannot be found in it a certain indication of the testator's intent to cut down his devises in fee to devises of an inferior estate.

If, however, it clearly appeared that such was his purpose, it was beyond his power to make it effective by such terms as he adopted and used in his entire will. "Also, if a feoffment be made upon this condition, that the feoffee shall not alien the land to any, this condition is void, because when a man is infeoffed of lands or tenements . . ., he hath power to alien them to any person by law. For if such a condition should be good, then the condition should oust him of all the power which the law gives him, which should be against reason, and therefore such a condition is void. . . . And the like law is of a devise in fee upon condition that the devisee shall not alien, the condition is void." 2 Coke upon Littleton (Ed. 1853) 222 b., 223 a., Sect. 360. That rule is still observed. 1 Swift's Digest, 94; Cleaveland, Hewitt & Clark, Probate Law & Practice, § 430; *Tarrant* v. *Backus,* 63 Conn. 277, 283, 28 Atl. 46. The conclusions of this court in that case are pertinent to this. We think it is clear, and should be held, that the intention of the testator was that each of his children should take a vested estate in fee in a designated part of his estate, which for its preservation he sought to make inalienable during their lives; and it is probable that he desired to leave such estate transmissible at the death of each child to the heirs of such child as the estate of such child. It is well settled by the weight of authority that when a devise is made technically in fee, any device to restrain alienation further by way of condition shall be taken to be repugnant and of no effect. 2 Schouler on Wills (6th Ed.) § 1341. When the fee has vested, all attempts to impose subsequent limitation become futile.

The terms of the eighth clause, whatever doubts they may raise or whatever inference they may imply or suggest, are not as express and positive, or as clear and decisive as the words of the clauses of the will which give the estates in fee. For this reason, those estates were not cut down by that clause. If, however, the terms of that clause expressly and positively indicated the testator's intention to limit the estates he had plainly given by subsequent conditions in total restraint of alienation, his intention can have no effect, because such conditions are illegal and void.

Looking at the whole will to ascertain the intention of the testator, we see that he disposed of his entire estate, and had in mind no possible remainder; and it is evident that he meant no part of it to become intestate. But if it should be held that the children took only life estates, the remainders would become intestate estate. Such a construction would thwart the intent of the testator and violate the established rule that courts will endeavor to avoid a construction of a will which will result in partial intestacy. *Weed* v. *Scofield*, 73 Conn. 670, 676, 49 Atl. 22.

Moreover, if it should be held that by the eighth clause of his will the estates of the children were limited to estates for life, followed by devises of the remainders to their heirs, the devises would evidently contravene the statute of perpetuities which was in force when this will was made and when this testator died. Such a construction will not be adopted whenever it is possible to make a construction that will render the devise valid. *Wolfe* v. *Hatheway*, 81 Conn. 181, 70 Atl. 645; *Nicoll* v. *Irby*, 83 Conn. 530, 77 Atl. 957. This seems to be conceded, unless we give to the word "heirs" a meaning different from its strict primary meaning. We do not discover in this will, however, read in the light of any circumstances revealed in the record, that

it clearly appears that the testator used the word in a different sense. *Nicoll v. Irby*, 83 Conn. 530, 77 Atl. 957; *Hartford Trust Co.* v. *Purdue*, 84 Conn. 256, 258, 79 Atl. 581.

In the sixth clause of the will the testator gives certain real property to his son James in fee simple. In the seventh clause he seems to attempt to impose certain conditions or restrictions upon the gift. Apparently he intended to direct his executrix to withhold the described share of James if he continued his intemperate habits and to give him only $5 as his full share of the estate. But he did not indicate clearly who should decide whether James continued his intemperate habits, or when a decision should be made, nor attempt to dispose of his share if he continued such habits. The words "shall be set to him" suggest that he had in mind some action by the Court of Probate which would strip James of the estate in fee which vested in him at his father's death. However construed, the terms of this clause are repugnant to the terms of the sixth clause, and they are also uncertain and indefinite. It is merely an attempt to give to some one not designated, at some time not fixed, in a contingency not specified, authority to determine how a part of the estate shall be disposed of. For these reasons we think this clause is void. *Bristol* v. *Bristol*, 53 Conn. 242, 254, 5 Atl. 687. Moreover, the record shows that no one has assumed to exercise such authority. The executrix, who lived more than nine years after the death of the testator, allowed the real property devised to James to pass into his possession and ownership, and it remained thus without objection by her or by his brothers and sister during their respective lifetimes. This unquestioned ownership and possession James enjoyed more than twenty-nine years, and then he conveyed the property in fee simple to his niece,

Elizabeth Tierney, subject to her agreement to furnish him with suitable support during the remainder of his life; and this she appears to have done. He died intestate, leaving a widow but no child. More than a year after his death, Elizabeth Tierney sold a part of the real property she had thus acquired to the predecessor in title of some of the parties in this action, and they now claim the benefit of that contract. Upon these facts, even if the seventh clause were held to be a valid condition subsequent, or any kind of limitation or provision enforcible at the time of distribution of the testator's estate, those who would now assert any right under it may justly be said to have waived it or lost it by their laches. *Scovill* v. *McMahon,* 62 Conn. 378, 26 Atl. 479.

We conclude, as we have already declared, that each of the children of the testator Michael Murphy, on his death, took an estate in fee simple in the real property given to each of them and described in the third, fourth, fifth and sixth clauses of the will; that none of these estates was defeated or cut down by any subsequent clause of the will; and that the seventh clause was void and is of no effect.

The Superior Court is advised to render its judgment accordingly.

No costs in this court will be taxed in favor of any party.

In this opinion the other judges concurred.