## ALBERT W. SPEYERS ET AL.
*vs.*
## MARY E. MANCHESTER, EXTRX.

Superior Court     New Haven County     File No. 64247

MEMORANDUM FILED APRIL 17, 1944.

*Daggett & Hooker,* of New Haven, for the Plaintiffs.

*Wiggin & Dana,* of New Haven, for the Defendant.

O'SULLIVAN, J.   This appeal from probate by a brother, a sister-in-law and two nieces of Hildegarde S. Hillhouse, who died testate on May 29, 1942, presents a grievance directed against the action of the probate court in accepting the inventory and allowing the administration account filed by the executrix in the process of settling the estate of the deceased. Incorporated in the inventory and account is a schedule of securities and cash, designated as "personal property other than that received by gift or will from her late husband, James Hillhouse." The appeal challenges the limited extent of the schedule, the claim being that it is incomplete.

By her will executed on June 15, 1940, a date subsequent to her husband's death, Mrs. Hillhouse made the following bequests to the plaintiffs; to her brother $7,000 (Article IX); to her sister-in-law $2,000 (Article X); and to each of her

nieces $2,500 (Articles XI and XII). Thereafter, by Article XIX, she stated that these four legacies "are from my property, other than that received by gift or will from my late husband, James Hillhouse." Continuing, she provided that if such property should be more than ample to pay the legacies, the excess should be proportionately added to them, while each should be ratably abated if the property proved inadequate to pay them in full.

With the prefatory statement that "I make disposition of my residuary estate", she devoted ten articles to the subject. Having evidently calculated that each part would approximate a value of $5,000, she divided the residue into sixty-ninths, of which she bequeathed a relatively small number to strangers and then placed the remainder in trust for Francis Hillhouse, her husband's brother, and his family.

The testatrix was possessed of a substantial amount of property acquired in part by gift and by will from her husband and in part from other undisclosed sources. Solely to differentiate the two sources, I shall call the latter property her individual estate. Its value of approximately $25,000 was rather modest in relation to what she had received through the bounty of her husband, for this had a value in excess of $350,000.

In the light of the curcumstances surrounding its maker, the will speaks eloquently, it seems to me, of the scheme of testamentary distribution Mrs. Hillhouse had in mind. The general plan, abundantly evident from her language, was simply this: whatever she owned as the result of gifts from her husband was to be returned, save for minor bequests, to those of his own blood; her individual estate, as I have previously indicated to what I refer when using that expression, her own relatives were to enjoy — that much and no more. Whether this design was considerate or generous or what another would have done is of no legal concern. The property was hers to distribute as she wished, and unless some rule of law blocks the way, her intention, once ascertained from the will, must be given effect. *Burr vs. Tierney,* 99 Conn. 647, 650; *Meriden Trust & Safe Deposit Co. vs. Spencer,* 127 *id.* 261, 264.

The problems presented by the appeal arise, in the main, from the fact that in 1935 James Hillhouse made a gift to his

wife of an assortment of bonds having an aggregate par value of $47,000, which Mrs. Hillhouse had sold or which had been called before her will was executed. On the other hand, all of the securities she had obtained by will from her husband were retained until her death in the identical form in which she had received them. These now form a part of her estate but they are not involved in this controversy.

However, in addition to these latter securities, there are others in the estate which the plaintiffs maintain are Mrs. Hillhouse's "property other than that received by gift or will" from her husband and consequently pass to the Speyers because, it is asserted, they cannot be traced to the $47,000 gift. Furthermore, they say, even though tracing has been established, the right of the Hillhouses to the additional securities is extinguished by ademption on the theory that they are legatees of specific property, and the result that follows, it is claimed, is that the securities belong to the Speyers as the true residuary legatees.

A preliminary claim warrants discussion. It is urged that the will should be examined in a light sympathetic to the Speyers because their kinship to Mrs. Hillhouse, they say, makes them favored in the eyes of the law. Broadly speaking, this may be so under certain circumstances. *Ansonia National Bank vs. Kunkel,* 105 Conn. 744, 750. But the principle is never available to alter the expressed intention of a testator. It is also urged that they are favored by the terms of the will itself, as, for example, by the provisions protecting their legacies against taxation. But similarly protected are the legacies of Mrs. Hillhouse's cook, waitress and gardner. These provisions exhaust their significance in the statement that the enumerated gifts shall suffer no reduction through the assessment of a tax. Nor is there weight to the further claim of favoritism that they are the only legatees given any excess over the specified amount of their gifts. They forget that they are also the only legatees whose gifts may shrink in amount, should that portion of the estate designated to pay them, prove insufficient for the purpose. In short, their relationship to Mrs. Hillhouse gives them no advantage they do not otherwise enjoy as legatees.

The conclusions the Speyers reach are unsound because the premises on which they build are fallacious. Their basic

error rests on a misapprehension of the meaning and intent of Article XIX. For example, they maintain that this article makes of them the true residuary legatees. This is not so. It does not attempt to dispose of the residue. It was incorporated in the will for the sole purpose of describing the property to be exhausted in paying the previously set-up legacies to the Speyers. It was inserted to single out what property the testatrix wished them to receive. The article does not dispose of the residue nor, I might add, does it provide for any gifts to the Hillhouses who, were it not for subsequent articles in that part devoted to the residue, would have, under the will, no rights at all to any part of the estate.

As the will merely described in general terms but failed to identify the specific property from which the Speyers legacies were to be paid, extrinsic evidence became imperative to ascertain of what it consisted.

Under the circumstances this was proper. *Bryan vs. Bigelow,* 77 Conn. 604, 614; *Hatheway vs. Smith,* 79 *id.* 506, 512.

From the evidence so developed, it appears that after Mrs. Hillhouse died, there was found in her safe deposit box a paper upon which had been typewritten a column of items headed by the following statement: "List of securities belonging to Hildegarde S. Hillhouse apart from those inherited from her husband or given to her by him." The paper was subscribed by Mrs. Hillhouse and bore the date of July 9, 1941. Ignoring for the moment all reference to cash items, the securities listed on the paper were owned by the testatrix at her death. These are the items of which the executrix made use in formulating the schedule found in the inventory and account. That the schedule is correct and complete is an inescapable conclusion because the testatrix has herself identified the property to which she referred in Article XIX.

The Speyers attempt to avoid this abrupt method of identifying the property to which they are entitled by insisting that in the first instance the executrix should segregate the personalty traceable to *inter vivos and* testamentary gifts from Mr. Hillhouse, and in default of an ability to trace any security to such sources, that security must be deemed a part of the testatrix' individual estate. This is an instance of putting the cart before the horse. It is unnecessary to do this because we already know the extent of the individual estate. Mrs. Hillhouse has told us of what it consists.

However, as a double check, evidence was offered of sufficient weight to satisfy the court, were it necessary to do so, that the additional securities are in fact directly traceable to the gift of bonds from Mr. Hillhouse. Consequently, it is of no moment whether the individual estate or her other property should be identified in the first instance. In either event, the result is the same.

Interwoven with what has been discussed is the further claim that the additional securities cannot pass to the Hillhouses because of the principle of ademption by extinction. Here again, the Speyers rely on a false premise in maintaining that Article XIX provides gifts for the Hillhouses. As previously observed, that article gives nothing to them. Their gifts are created by those articles devoted to the residue. They are the true residuary legatees and ademption is never applicable to such legatees. 4 *Page, Wills,* §1515, p. 360.

The question, of course, is not what did Mrs. Hillhouse mean to say but what did she mean by what she did say. *Swole vs. Burnham,* 111 Conn. 120, 122. That intent is to be found in the language of the will. "However, in ascertaining the intent which is expressed in a certain provision, a will is to be read as a whole and if it discloses an underlying intent, that is to be considered in determining the meaning to be accorded to the particular language under consideration." *Mitchell vs. Reeves,* 123 Conn. 549, 556.

I suppose that language, like figures, can be warped to prove almost anything. The construction of Article XIX, urged by the Speyers, pushed to its logical conclusion, leads to a glaring injustice. Suppose that Mrs. Hillhouse, who was a woman familiar with the stock market, had converted the $350,000 worth of securities received by will into others. The claim would be that, as ademption has extinguished the Hillhouse legacies, the Speyers would receive the entire estate.

If two constructions are available to a trier, he should adopt that one which will carry out the intention of the testator. Not that I believe two constructions are available in the present instance. But if there are, I select that which will protect the wishes of the testatrix. The strict and technical rules of syntax should not be employed to warp an apparent intention of a testator. Hence, I hold that the executrix properly listed the securities in the schedules found in the inventory and account.

There is also a cash item appearing in the schedules with this notation: "2761.68 in cash representing $2600. U.S. Treas. Bonds 2-7/8% 1955-60 loaned to the estate and sold for this amount on Nov. 24, 1939 and repaid by estate to H.S.H." I am not called upon to reason out whether the Speyers are entitled to this item. I merely decide, *pro forma,* that it was properly incorporated in the schedules because the Speyers claim it and no question has been raised by anyone to the contrary.

However, there is another item of cash which should be added to the schedules. It comes about in this way. Exhibit 4 is a memorandum partly typewritten and partly in the handwriting of Mrs. Hillhouse. Referring to a bank deposit which she had made, she said in the memorandum that the amount of the deposit "plus $206.60 belonging to Hildegarde S. Hillhouse has been invested in 2 10-year $1000.00 Savings Bonds."

By this memorandum she identified an additional item of her individual estate in the same fashion as, through Exhibit 3, she identified the securities referred to earlier. While this is now reflected as a proportional interest in two bonds, and while the value of this interest cannot accurately be determined until the bonds are sold, its value may be arbitrarily set, with the approval of counsel, at $206.60. This is a part of Mrs. Hillhouse's individual estate and must be distributed proportionately to the Speyers.

Accordingly, to the schedules in question is added the cash item of $206.60 and a similar amount is to be credited to the amount on hand for distribution to the Hillhouses.

Because of the addition of this cash item the appeal is sustained and the account, as amended, is stated.