### Malachi D. Huff et al. v. James M. Browning, Adm'r, etc., et al.

1. WILLS—*Primary Object in Construction.*—The primary object in the construction of a will is to discover the intention of the testator, and when discovered to give effect to it.

2. SAME—*Qualifying Clauses to be Construed in the Light of What Precedes Them.*—Where a testator, after having bequeathed property to a son upon certain prescribed conditions, and those conditions having been fulfilled, and the property bequeathed having passed to and been received by such son, it would be a violation of the testator's plain intention to infer that he designed to take it away again.

3. SAME—*Reconciliation of Repugnant Clauses.*—A construction by which the different clauses of a will are rendered repugnant to each other can not be sustained.

Bill to Construe a Will.—Appeal from the Circuit Court of Hancock County; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed September 11, 1901.

SCOFIELD & MCMAHAN, attorneys for appellants.

APOLLOS W. O'HARRA, attorney for American Baptist Home Mission Society and American Baptist Missionary Union.

J. B. RISSE & SON, attorneys for James M. Browning, Adm'r, etc.

MR. JUSTICE WRIGHT delivered the opinion of the court.

This was a bill in equity filed by the appellants against appellees to construe the will of Francis M. Huff, deceased,

and the court having sustained a demurrer to and dismissed the bill for want of equity, this appeal is brought to reverse such decree.

The bill seeks a construction of the fourth paragraph of the will, which is as follows:

" Fourth. I direct that all the real estate which I own in the town of Golden, Adams county, Illinois, be sold within one year after the date of my death, at public or private sale, by my executor at his option, as he may deem to be to the best interests of my estate. I further direct that the proceeds of such sale with the remainder of my personal estate not disposed of in this will, both principal and interest, be kept loaned out at interest, upon unincumbered farm lands in at least double the amount in value of the money loaned, all loans to be approved by the court, except so much thereof as may be necessary for the education and support of my two minor sons aforesaid, until they become of lawful age. Then I direct that the whole of said moneys, notes, or other evidences of indebtedness be equally divided between said sons, O. K. and Harry. But in the event of the death of either of my sons without leaving issue, then I direct that the whole shall be paid to the survivor, and in the event of the death of both of my sons without leaving issue, then I order the whole of my property that they would be entitled to receive and enjoy under the provisions of this will to be divided equally between all my brothers and sisters. The issue of any deceased brother or sister to receive the part that the parent would have been entitled to receive if living."

The material facts necessary to a decision of the questions presented, are that the testator, Francis M. Huff, at the time of his death left two minor sons, Harry and O. K. His younger son, Harry, died, without issue, before he was twenty-one years of age. His elder son, O. K., until he was past twenty-one years of age, was not married, and died without issue. O. K. Huff left a will in which he gave the bulk of his property, including such as he received under paragraph four of his father's will, to the appellees herein, the American Baptist Home Mission Society, and the American Baptist Mission Union. The appellee James M. Browning is the administrator of O. K. Huff, with the will annexed. The estate mentioned in the will was paid

by the executor thereof, and otherwise went into the hands of Browning, as guardian of Harry and O. K. Huff, before the death of Harry, and upon the arrival of O. K. at the age of twenty-one years it was all turned over to him as his own property and remained in his hands at the time of his death, when it passed under the control of Browning, as administrator with the will annexed of O. K. Huff.

In the third clause of his will Francis M. Huff recited that his executor was then in Nebraska to make an investment for him in real estate, and then directed that if such investment was not made before his death that the same be made, not exceeding $2,500, to be purchased in the names of his two sons, O. K. and Harry, to descend to and be equally divided between them when they became of age. This part of the will was never executed, and the money mentioned therein fell within the provisions of paragraph four to be disposed of as therein directed.

The theory of the bill filed herein, and it is for the purpose of putting that construction upon the will, is that by the terms of the will of Francis M. Huff, under the facts stated, the property disposed of by paragraph four, at the death of O. K. Huff, went to the brothers and sisters of Francis M. Huff, and not to the legatees of O. K. Huff under the will made by him previous to his death, and this forms the question for the decision of the court.

The primary object in the construction of a will is to discover the intention of the testator, and when such intention is ascertained to give it effect. All the rules of the law prescribed for governing such construction, have been devised for the purpose of assisting courts to arrive at a correct solution of the question of the intention of the testator in the use of the language employed to express the same in each particular will, and with reference to the subject-matter and his surroundings at the time the will was made, so far as such subject-matter and surroundings can be ascertained from the provisions of the will itself. An examination of all the numerous authorities cited by counsel on both sides in this case, and an endeavor to apply, reconcile

or distinguish them from the question before us, would sub-serve no good purpose, and would end in confusion worse confounded. Having in mind, however, the language employed by the testator, the objects of his bounty and his surroundings as disclosed by his will, we think there is no difficulty in discovering the plain meaning and intention of the will. First, he directs his estate to be sold, and that, with the remainder of his personal estate not disposed of by the will (evidently money), he directs, both principal and interest, to be kept loaned out at interest, upon unincumbered farm lands, in at least double the amount in value of the money loans, to be approved by the court, except enough to educate and support his two minor sons until they become of lawful age. Now to this point the meaning is clear, to support and educate his two sons until they attain their majority, and at the same time preserve the balance of the fund safely until that period of time. The next expression is clear and perspicuous and nothing need be added or said to understand it:

"Then I desire that the whole of said moneys, notes or other evidences of indebtedness be equally divided between said sons, O. K. and Harry."

No language could have been better chosen to confer an absolute gift of property. The only condition previously fixed was the age limit, when the estate was to vest absolutely. This is followed by a qualifying clause that in the event of the death of either of the sons without leaving issue, the whole to be paid to the survivor. When? That had been previously fixed, upon his arrival at the age of majority. But in the event of the death of both without leaving issue, then the whole of the property the sons would be entitled to receive and enjoy under the provisions of the will to be equally divided between the brothers and sisters. In the event of the death of both sons without leaving issue, then to go to the brothers and sisters. In the event of the death, when? Clearly, before the age of majority. Then, on the death of both before such time, the whole of the property the sons would be entitled to receive and enjoy

under the provisions of the will to be equally divided between brothers and sisters. The whole of the property the sons would be entitled to receive. If they died after they were twenty-one years of age, they had already received it, and the language, " would be entitled to receive and enjoy," would then be without meaning.

The subsequent qualifying clause must be considered in the light of what preceded it. Then, as we have seen, the property was vested absolutely in and surrendered to O. K. Huff, upon his arrival at majority, without qualification. The testator having once given the property to his son upon certain prescribed conditions, and those conditions having been fulfilled, and the property passed to and received by him, it would, we think, be a violation of his plain intention to infer that he designed to take it away again. In truth such a provision, if it was plain the will contained it, which, as we have already said, it does not, would be repugnant to the previous provisions of the will, in which the money and property was given absolutely to the son. A construction by which the different provisions of a will are rendered repugnant, can not stand, when by another reasonable interpretation the same provisions can be made to harmonize.

We therefore conclude the Circuit Court properly construed the will and committed no error in sustaining the demurrer and dismissing the bill for want of equity, and its decree will be therefore affirmed.