ADELAIDE B. STRONG ET AL. *vs.* HENRY G. ELLIOTT ET AL., EXECUTORS (ADELAIDE B. STRONG ET AL. APPEAL FROM PROBATE).

First Judicial District, Hartford, October Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

An express and positive testamentary gift in fee simple will not be cut down to a lesser interest or estate by a subsequent clause of uncertain or ambiguous meaning. To accomplish such a result the qualifying language must be as pointed and direct as the terms of the gift.

Having given a pecuniary legacy in fee to *G*, who survived the testatrix, the will provided that in case *G* "should die without issue," the amount of the legacy should be divided equally among four others. *Held* that the words quoted might refer either to *G's* death without issue during the lifetime of the testatrix, in which case *G's* title in fee would not be affected, or to *G's* death without issue whenever that might occur, in which event *G's* interest would be cut down to something less than a fee; and that inasmuch as the other provisions of the will did not clearly resolve or dispel this uncertainty, the gift in fee must stand, and its attempted limitation, if indeed it were such, must fail.

In one clause of her will the testatrix gave $6,000 to the parish of the local church in which she was much interested and to which she had been a liberal contributor. By a later clause she gave a legacy of $3,000 to one *T*, and provided that "at the decease of" *T* the remaining portion of the legacy should go to said parish. *T* died before the testatrix. *Held* that it was the intent of the testatrix to substitute the parish as a legatee in the place and stead of *T*, upon the latter's death, whenever that might occur; and that such intended disposition of the money was not in contravention of any rule of law.

The expression "at the decease of" the first legatee is as aptly and naturally descriptive of such an occurrence at one time as at another. It may, however, be used in a narrower sense, as having reference to a death in the one case before, and in the other after, the testator's; but whether so used or not must depend upon the intent of the testator as gathered from the whole will when examined in the light of the pertinent circumstances.

The accepted rules for the interpretation of wills do not give fixed and inflexible meanings to ordinary language, nor, in its construction, do they demand rigid conformity to its strict or technical import.

The cases of *Stone* v. *McEckron*, 57 Conn. 194, and *Horton* v. *Upham*, 72 Conn. 29, distinguished.

Argued October 3d—decided December 19th, 1911.

APPEAL from an order and decree of the Court of Probate for the district of New Milford distributing the testate estate of Alice C. Bostwick, late of New Milford, deceased, and involving the construction of her will, taken to and tried by the Superior Court in Litchfield County, *Case, J.;* facts found and judgment rendered confirming in part and setting aside in part the decree of the Court of Probate, from which the plaintiffs and St. John's Parish appealed. *Error in part.*

Alice C. Bostwick, late of New Milford, died August 17th, 1908, leaving a will, and an estate which consisted of about $196,000 in cash and securities, and certain real estate in Connecticut and Florida. She was seventy-two years of age and left neither husband nor child. By the first and second paragraphs of the will she disposed of a piece of real estate, and by the sixteenth her personal effects. The real estate was given in fee to Elizabeth Buck, the mother of the plaintiffs, who was a sister of the testatrix's husband. It was provided, however, that in case Mrs. Buck died before the testatrix, the plaintiffs should share the property. The remainder of the will is as follows:—

"Third. I give and bequeath to the said Adelaide Buck, niece of my deceased husband, Henry E. Bostwick, the sum of fifteen thousand dollars, to her absolutely and her heirs.

"Fourth. I give and bequeath to the said Alice Buck, niece of my deceased husband, Henry E. Bostwick, the sum of fifteen thousand dollars to her absolutely and her heirs.

"Fifth. If either of the above named Adelaide and Alice Buck should die before me without issue, then it is my will that her share go to her surviving sister. If either of them or both of them die before me leaving issue, then it is my will that such issue take the share that would have gone to the mother if living.

"Sixth. I give and bequeath to St. John's Parish of the town of New Milford, Conn., the sum of six thousand dollars, the income thereof only to be used from time to time, by said parish to support the preaching of the Gospel and to pay toward the annual expenses of said parish.

"Seventh. I give and bequeath to my nephew, Henry M. Baldwin, the sum of twenty thousand dollars to him absolutely and his heirs and assigns forever.

"Eighth. In case my said nephew die before me leaving issue, then it is my will that such issue take the legacy herein left to said Henry M. Baldwin.

"Ninth. I give and bequeath to my cousin and best friend, Jennette L. Gaylord, daughter of Irwin B. Gaylord, the sum of fifteen thousand dollars.

"Tenth. In case of the decease of the said Jennette L. Gaylord without issue, then it is my will that the above legacy be equally divided between Henry M. Baldwin, Henry G. Elliott, Adelaide Buck and Alice Buck.

"Eleventh. To Emily Merwin, daughter of my deceased aunt, Betsey Warner, I do give and bequeath the sum of three thousand dollars, and in case she dies before me, then this legacy is to go to her daughter, Caroline, absolutely and to her heirs.

"Twelfth. To Ellen Taylor, daughter of my deceased aunt, Betsey Warner, I do give and bequeath the sum of three thousand dollars to her absolutely and her heirs, and in case the said Ellen Taylor die before me, then it is my will that the legacy above left to her go to her issue absolutely.

"Thirteenth. To Jane Taylor, daughter of my deceased aunt, Betsey Warner, I do give and bequeath the sum of three thousand dollars. At the decease of said Jane Taylor, then it is my will that any portion of said legacy that remains, the remaining portion shall be given and go to St. John's Parish, New Milford, Conn., to be used for the purposes specified in the first bequest under this will to said parish.

"Fourteenth. To my cousin, Henry G. Elliott, I do give and bequeath the sum of fifteen thousand dollars to him and to his heirs, and if he die before me, then said sum to go to his heirs-at-law absolutely.

"Fifteenth. To my cousin, Robert F. Gaylord, I do give and bequeath, as a friend, the sum of two thousand dollars to him absolutely and to his heirs, and if he

dies before me leaving issue, then the above legacy is to go to such issue absolutely.

"Seventeenth.    To my faithful maid and friend, Mary Donnelly, I give and bequeath the sum of one thousand dollars absolutely.

"Eighteenth. All the rest and residue of my property of every sort and kind wherever situated that is not hereinbefore disposed of and which I may own at the time of my decease, I do give and bequeath to the above named, Henry M. Baldwin, Jennette L. Gaylord, Henry G. Elliott, Adelaide and Alice Buck equally share and share alike, to them absolutely and to their heirs forever, and in case either of them die before me, it is my will that his or her share of my residuary estate go in the same manner as the legacies left to them respectively, excepting the share of this residue which would belong to said Jennette L. Gaylord in case of her decease before me without issue shall be equally divided between Henry M. Baldwin, Henry G. Elliott, Adelaide Buck and Alice Buck or their heirs."

Henry M. Baldwin, the testatrix's nephew and next of kin, was married and had children living when the will was executed.    Adelaide and Alice Buck are two of the present appellants.    They were then unmarried, and aged respectively twenty-three and twenty-one years.    Henry G. Elliott, described in the will as the testatrix's cousin, was married and had children living. Jennette L. Gaylord was a spinster aged about forty-five years, and a cousin of Mrs. Bostwick.    From her infancy she had been on terms of the closest intimacy with Mrs. Bostwick, and was the latter's companion. Her financial means when the will was made were very limited, as Mrs. Bostwick well knew.    Emily Merwin and Robert F. Gaylord had children living at the execution of the will.    The finding is silent concerning Ellen Taylor and Jane Taylor in this respect.

For many years prior to her death Mrs. Bostwick had been much interested in the affairs of St. John's Parish and in assisting financially its benevolent work, and her contributions toward its parish expenses had been liberal. Jane Taylor died before Mrs. Bostwick. She was neither the child, grandchild, brother or sister of the latter.

The will was drawn by a layman. Baldwin and Elliott, above mentioned, were named and qualified as executors.

*Samuel A. Herman,* with whom was *Henry S. Sanford,* for the appellants (plaintiffs).

*Morris W. Seymour* and *John T. Hubbard,* for the appellant St. John's Parish (defendant).

*Donald T. Warner,* with whom was *Howard F. Landon,* for the appellee Jennette L. Gaylord (defendant).

*Frederic M. Williams,* for the appellees Elliott *et al.,* executors (defendants).

PRENTICE, J.  The first question presented by these appeals arises from the ninth and tenth paragraphs of the will. By the ninth, Jennette L. Gaylord is given the sum of $15,000 absolutely. By the tenth, it is provided that in case of her decease without issue the legacy shall go to other persons. She claims that upon the death of Mrs. Bostwick the legacy vested in her absolutely. The plaintiffs, being two of the four donees under the tenth clause, contend that she took only an estate tail by implication, with a gift over by way of executory devise to the four persons named.

The ninth paragraph contains an express absolute gift. Such a gift will not be reduced to a lesser estate "by mere implication from a subsequent gift over, but

may be by subsequent language clearly indicating intent and equivalent to a positive provision." *Mansfield* v. *Shelton*, 67 Conn. 390, 394, 35 Atl. 271; *Browning* v. *Southworth*, 71 Conn. 224, 226, 41 Atl. 768. "It is a sound rule of construction that an express and positive devise in fee cannot be cut down to an inferior estate by a subsequent clause in the will, unless that be equally express and positive." *Fanning* v. *Main*, 77 Conn. 94, 99, 58 Atl. 472. "Executory devises of personal property and contingent remainders are governed by the same rules, so far as concerns their alienation or transmission." *Ingersoll* v. *Ingersoll*, 77 Conn. 408, 410, 59 Atl. 413.

Turning now from the clear and positive provision of paragraph nine, making in express terms an absolute gift, to the subsequent provision in paragraph ten, which is relied upon as cutting it down, we find that the latter paragraph is one of uncertain meaning. *Lawlor* v. *Holohan*, 70 Conn. 87, 90, 38 Atl. 903. Read in one permissible way, that is, limiting the contingency of death to one before that of the testatrix, its effect would not be to subtract from Miss Gaylord's absolute interest, should she live to have any interest vest in her. Read in another way, as having in view Miss Gaylord's death after that of the testatrix or at any time, its purport would be to diminish her interest in the fund, upon its vesting, to something less than the original gift expressed. In other words, the attempt here is to cut down an absolute gift upon the strength of an ambiguous expression. It is clear, to say the least, that unless the ambiguity is one which can be resolved with such certainty as that in the end the purpose of the testatrix to accomplish that result and her provision for its accomplishment are so manifest and positive as to satisfy the requirement of the rules stated, the attempt must fail.

This means that the interpretation of the ambiguous language must depend upon something more substantial than a mere prima facie presumption. It must rest upon the more solid foundation of an intent clearly manifested and sufficiently expressed. We have no occasion, therefore, to inquire whether the law attaches to the words "in case of the decease . . . without issue," as used in the paragraph, a presumptive limitation to death before the testator, or a presumptive extension to death after the testator. It is sufficient to note that there is in the will, read in the light of the surrounding circumstances, no reasonably clear indication of an intent or purpose on the part of the testatrix to give to Miss Gaylord anything substantially less in amount, or any lesser estate therein, than she gave to the four other persons who, with her, form the group of residuary legatees and principal legacy beneficiaries. These five are placed upon a precisely equal footing as sharers of the large residuum, and they receive legacies in equal amounts, save that Baldwin gets $20,000 where each of the others gets $15,000. Here are indications of a purpose to treat the members of this group substantially alike and to make them the substantially equal beneficiaries of the great bulk of the estate. The plaintiffs point to certain matters as being indicative of a contrary intent. But they possess little real significance and fall far short of resolving the doubt, which gathers about the testatrix's language, in favor of the plaintiffs' contention.

The Superior Court was not in error in confirming the order and decree of the Court of Probate adjudging that Miss Gaylord has an absolute estate in this $15,000 legacy.

The second question arises out of paragraph thirteen, which gave to Jane Taylor $3,000, with the further provision that at her decease any portion of the legacy

remaining should go to St. John's Parish. The Superior
Court overruled, and, we think, erroneously, the claim
of the Parish that, by reason of Jane Taylor's death
before the testatrix, it became entitled to receive the
$3,000 upon Mrs. Bostwick's decease, and sustained the
claim of the plaintiffs that the legacy lapsed and fell
into the residuum.

A determination of the question thus at issue before
the court does not call for an adjudication as to what
estate Jane Taylor would have taken in the fund thus
set apart for her, had she survived Mrs. Bostwick, or as
to what, if any, would have vested in the Parish in that
event. Jane Taylor's death, occurring in point of time
as it did, prevented the vesting in her of any estate, and
the sole question for adjudication is as to what, if any-
thing, the Parish took in the order of events as they
occurred. The answer to this question is one which,
as will be seen, is in no manner dependent upon the
conclusions which might be reached upon the subjects
just suggested. It involves two incidental inquiries—
the first as to what disposition of the fund in contro-
versy the testatrix made in terms, as the language of
her will is to be interpreted, and the second, as to
whether or not the law interposes any obstacle in the
way of that disposition being effectuated, and if so, with
what results.

The clear language of the will makes it apparent that
the testatrix intended that St. John's Parish should
have such portion of the legacy as Jane Taylor, sur-
viving the testatrix, should leave unexpended at her
death, and, therefore, that the words "at the decease of
said Jane Taylor," in the second sentence of the para-
graph, are not to be construed as referring only to her
decease before that of the testatrix. This signifies that
she contemplated that the Parish might thus receive
the entire principal of the fund and that such a result

would be in consonance with her wishes. She had for many years been much interested in the affairs of the Parish and a liberal contributor toward the payment of its expenses and benevolences. Her regard for it and desire to continue her assistance is evidenced by the gift to it contained in the sixth paragraph. In the instance of every other one of the nine personal legacies contained in the will, save only a small one to a servant, there is a provision attempting a disposition of it to other persons than the first donee in the event of such donee's death prior to the testatrix's, so that in all these cases she clearly intended that nothing therefrom should fall into the already considerable residuum. It is difficult to believe from a reading of the will in connection with the pertinent surrounding circumstances, that the inexperienced lay scrivener who drew it, or Mrs. Bostwick when she executed it, had any thought or intent that, by the slight variation in the by no means uniform language elsewhere employed, she was making a provision which should control the bestowal of the $3,000 in question, in the event that Jane Taylor should predecease her, differently from what was done throughout the instrument under similar conditions, and one which in the event named would result in an increase of the residuum.

The words "at the decease of . . . Jane Taylor," upon which the plaintiffs rely for the contrary contention, are as aptly and naturally descriptive of the event of decease at one time as at another. It was an appropriate phrase to use as indicative of such a contingency, whenever, in the order of events, it should occur. It is language which, however, may be used in a more narrow sense, and as limited to death in one case before and in another after the testator's; and it will be so interpreted when the intent to that effect appears. In all these cases the ordinary and natural meaning is

restricted by reason of the controlling factor of intent. What we have to determine here, as best we can, is Mrs. Bostwick's meaning and intent. The evidences of that intent are by no means as clear as they might be, but our examination of the will in the light of the pertinent circumstances leads us to the conclusion that Mrs. Bostwick used the words she did with reference to the death of Jane Taylor at any time and as conveying to her mind the same idea as some such phrase as "in the event of," or "in case of," and that her intent, sufficiently expressed in the paragraph, was to make the Parish a substitute legatee for Jane Taylor in the event of her death whenever occurring, as to the $3,000 fund or such part thereof as she having taken should leave unexpended. We discover nothing of substance which could be urged against this conclusion except the fact that the fund in its entirety is not referred to as the subject of the secondary gift, but only a remaining portion of it. As the will was drawn by a lay scrivener whose legal conceptions were by no means precise and accurate, it would be dangerous to place great reliance upon the mere matter of phraseology which chanced to be used to express the testatrix's conception and purpose.

The plaintiffs rely upon the cases of *Stone* v. *McEckron,* 57 Conn. 194, 199, 17 Atl. 852, and *Horton* v. *Upham,* 72 Conn. 29, 31, 43 Atl. 492, in both of which the words under consideration appeared in the will in a connection somewhat similar to the present, as strongly supporting their contention that the secondary gift to the Parish must fail for the reason that Jane Taylor died before the will took effect and therefore that it could not take "at her decease." In each of these cases the question was whether or not a gift "at the decease of" the first donee was one which took effect *only* in the event of the death of such donee be-

fore that of the testator—the reverse question to that here.   In each the first donee had survived the testator, and the question was whether he took a fee or only a life estate.   That question was one to be resolved by a discovery of the testator's intent from the language of the respective wills and the surrounding circumstances.   The opinion in each case undertook to so resolve it, and what was said was spoken in argument to that end.   The words in question were noticed for the inferences which might be drawn from them as to the testator's intent and in connection with such other matters as might furnish a foundation for an inference, but as not by any means of themselves conclusive or carrying controlling weight.   There was no attempt, as clearly appears, to lay down any arbitrary rule of construction to be applied to them.   Such an attempt would have been in direct violation of the accepted rules for the interpretation of wills, which do not give to ordinary language fixed and inflexible meanings, or demand in its construction rigid conformity to its strict or technical import.

We have then a will in which the testatrix used language which sufficiently expressed her intent to make St. John's Parish, as regards the $3,000 legacy in question, a substitutionary legatee to take the place of Jane Taylor, whenever she should die, and that as such substitute it should in the event named, whenever occurring, take the legacy or whatever should then remain of it, if a portion had already been expended by her.

Such a disposition is not in contravention of any rule of law.   This is equally true whether it be held that Jane Taylor, had she survived Mrs. Bostwick, would have taken the fund absolutely or only a life estate in it with remainder over to the Parish.   If she would have taken a life estate with remainder over, the gift

to the Parish, as the donee in remainder, would, upon the decease of Mrs. Bostwick, have vested in the Parish as an absolute one. *Hollister* v. *Butterworth*, 71 Conn. 57, 60, 40 Atl. 1044.

If, on the other hand, Jane Taylor, in the event of her survival, would have taken absolutely, the result in the order of events as they occurred would have been to make the Parish the legatee of the fund when the will took effect upon Mrs. Bostwick's death. It is indeed a familiar principle that a remainder cannot be limited upon a fee. But this principle, itself somewhat limited in its operation by a recognition of executory devises, is not applicable to cases where, as here, the fee has never vested and cannot vest by reason of the contingency which has happened, and another estate has been created as a substitute for it in that contingency. In such a situation the reasons for the principle are entirely absent. If the fee first in order vests, all subsequent limitations become void; if it does not and cannot, there is nothing to stand in the way of the substitutionary estate taking effect. English and American courts, including this, in cases recent and by no means recent, have recognized and applied this general principle. *Higgins* v. *Dowler*, 1 P. Wms. 98; *Doe* v. *Fonnereau*, 1 Douglas, 478; *Sheffield* v. *Orrery*, 3 Atkyns, 282, 287; *Burbank* v. *Whitney*, 24 Pick. (Mass.) 146; *Thomas* v. *Castle*, 76 Conn. 447, 451, 56 Atl. 854; 1 Fearne on Remainders, s. p. 517.

There is error in part, and so much of the judgment as relates to the legacy contained in the thirteenth paragraph of the will is reversed, and the cause remanded for a correction of the judgment in such manner that the order and decree of the Court of Probate appealed from be confirmed in respect to those matters which were made the subject of that appeal.

In this opinion the other judges concurred.