THE MERIDEN TRUST AND SAFE DEPOSIT COMPANY, EXECUTOR, *vs.* RUTH CURTIS SQUIRE ET ALS.

Third Judicial District, New Haven, January Term, 1918.

PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, JS.

Although an absolute estate once given by will may be cut down to a lesser interest by subsequent provisions clearly showing an intent to diminish the gift, yet in order to have that effect the qualifying language must not be of doubtful meaning or uncertain in its indication of the testamentary purpose.

In the present case a testatrix, who died April 1st, 1914, gave the residue of her property, which comprised by far the larger part of it, in equal shares and in fee simple to her son George and to her granddaughter Ruth, the latter's share, together with its increase, to be paid to her when she reached twenty-one. The same section of the will then provided that in the event of Ruth's death, either before or after the decease of the testatrix, without lawful issue living at the time of her (Ruth's) decease, her portion should go to George in fee; and also "provided further," that if at Ruth's death without lawful issue or descendants thereof then living, George should not be living and should have left no lawful issue or descendants, the residue of the estate should go in equal portions to specified ecclesiastical corporations and a library. The will was executed in April, 1908, when the testatrix was about seventy-five years old; George was then nearly fifty-one, and Ruth, who was the daughter of a deceased daughter, was twelve, and has never married. At that time George had one child, a daughter, who was married in 1910 and has two children, one born in 1911 and one in 1914. In a suit to construe the will the main question was whether the reference to Ruth's death "without issue living at the time of her decease," in the first proviso, and her death without "lawful issue or descendant thereof at the time of her decease," in the second proviso, meant her death whenever that might occur, or her death within a limited time; and if the latter, what that period was. *Held:*—

1. That it could not be supposed that the testatrix, in creating a contingency upon which her son should take the granddaughter's share, contemplated one that in the ordinary course of nature would not occur until long after the son's death; that it was more probably her intention, in the first proviso at least, to confine or limit the operation of the defeasance clause embodied therein, to the period during which Ruth's share was to remain in the exec-

Meriden Trust & Safe Deposit Co. *v.* Squire.

utor's hands awaiting her arrival at full age; and that such a conclusion was aided by the familiar principles of law which encouraged the early vesting of estates, preferred the first to the second taker, and looked with disfavor upon defeasance provisions.

2. That the second, proviso, standing alone, could have no direct or immediate effect in defeating the titles upon which the residue of the estate was now held, since the conditions of defeasance therein prescribed had become impossible of fulfilment by the death of George leaving issue surviving at his death; and therefore that no right, title or interest in the residue of the estate could pass to the ecclesiastical societies and library named in this clause as contingent donees.

3. That the title by which George held his half of the residue became absolute and indefeasible in his estate immediately upon his death leaving surviving issue.

4. That the second proviso was, however, to be considered in connection with the first in arriving at the testatrix's meaning and intent, in so far as that might be uncertain or ambiguous with reference to the disposal of Ruth's share.

5. That while the decease of Ruth "without lawful issue or descendant thereof living at the time of her decease," as prescribed in the second proviso, did seem to convey the idea of a longer outlook than that required for Ruth to reach her majority, viz, nine years, it did not necessarily follow that the two provisos had reference to the same point of time, and that the first must therefore be extended to Ruth's death whenever that might occur; that in view of the inequalities and complications which would be likely. to arise from such a construction, as well as the general scheme of the will to treat the two branches of the family, each represented by one person, with substantial equality, it certainly could not be said that Ruth's absolute estate previously given by the will, had been intentionally cut down to the extent claimed by those in opposition; and that having reached her majority, Ruth now had an absolute title to her share, and the right to receive it from the executor.

Unless otherwise explained by its context, the phrase "dying without issue" means without issue living at such death.

Argued January 18th—decided March 12th, 1918.

SUIT to determine the construction of the will of Augusta M. Curtis of Meriden, deceased, brought to and reserved by the Superior Court in New Haven County, *Webb, J.,* upon the facts alleged in the complaint, for the advice of this court.

Augusta M. Curtis died April 1st, 1914, possessed of real and personal property and leaving a will executed April 15th, 1908, with a codicil thereto, possessing no present importance, dated October 9th, 1911. Her only heirs-at-law were a son, George M. Curtis, who was nearly fifty-one years of age when the will was executed, and Ruth Curtis Squire, a daughter of a deceased daughter of the testatrix, then twelve years old and still unmarried. George M. Curtis at that time had one child, a daughter, who was old enough to be married two years later. Of this marriage were born two children, one in 1911 and the other in 1914. All of the persons above named as descendants of the testatrix are now living, except George M. Curtis, who died August 28th, 1915.

Mrs. Curtis' will, duly probated, contains the following seventh paragraph:—

"All the rest and residue of my property I give, bequeath and devise as follows, to wit: the same to be equally divided between my son, George M. Curtis, and my granddaughter, Ruth C. Squire, daughter of Agnes Curtis Squire, deceased, the same to be paid to her together with the increase thereof upon her arriving at twenty-one years of age, to them, their heirs, executors and assigns forever;

"Provided, however—in the event of the death of said Ruth Curtis Squire, either before or after my decease, without lawful issue living at the time of her decease, then her portion to go to my son, George M. Curtis, his heirs, executors and assigns forever:

"Provided further—if at the time of the decease of said Ruth Curtis Squire, without lawful issue or descendant thereof living at the time of her decease, the said George M. Curtis shall not be living and shall leave no lawful issue or descendants, then all the rest and residue of my estate, after the provisions of sec-

tions two, three, four, five and six have been satisfied, I give, bequeath and devise unto St. Andrew's Parish of Meriden, Connecticut: The Trustees of Donations and Bequests for Church Purposes of the Diocese of Connecticut for the use of St. Andrew's Parish of Meriden, Connecticut; and to the Meriden Trust & Safe Deposit Company, in trust to pay over the increase thereof to the directors of the Curtis Memorial Library for its use and benefit so long as it exists, equally to be divided between them, and if no public library is in existence at such time, then the bequest to said library to go to St. Andrew's Parish—, to have and to hold the same, to them, their successors and assigns forever."

All of the questions presented for advice arise out of this paragraph, and no other portion of the instrument is claimed to furnish assistance in giving their answer. George M. Curtis was named as executor. He settled the estate which is now ready for distribution. The property in his hands consisted entirely of personal estate. His final account, approved March 29th, 1915, showed that the residue for distribution amounted to $302,844.24. The Court of Probate thereupon ordered a distribution and appointed distributors. They distributed one half of this amount, to wit, $151,422.12, to George M. Curtis, subject to the second proviso of the seventh paragraph of the will, which the distribution recited. This was followed by the resignation of Mr. Curtis as executor and the appointment of the plaintiff in his stead. The plaintiff charged itself with the remaining one half of the $302,844.24, which was delivered over to it by Mr. Curtis. Its account, rendered May 23d, 1917, and approved June 1st, 1917, showed that accumulations had brought the fund in its hands up to $168,915.72. The following month the plaintiff presented its peti-

tion to the Court of Probate alleging that Ruth had
reached her majority, that she was the sole benefici-
ary of the property in its hands subject to the second
proviso, and asking the court to order a distribution
of it. The Court of Probate found that Ruth had
arrived at the age of twenty-one, and ordered the
plaintiff to hand over the property, which, upon a
supplemental accounting, was found to amount to
$169,311.53, to Ruth, subject to the provisions of the
will. From this order both the plaintiff and Ruth ap-
pealed, such appeals being the two cases stated in the
footnote.

---

THE MERIDEN TRUST AND SAFE DEPOSIT COMPANY, EXECUTOR, APPEAL
FROM PROBATE.

RUTH CURTIS SQUIRE'S APPEAL FROM PROBATE.

Argued January 18th—decided March 12th, 1918.

APPEALS from an order and decree of the Court of Probate for the
district of Meriden directing the executor of the will of Augusta M.
Curtis to hand over personal property amounting to $169,311, compris-
ing the undistributed portion of the estate in its hands, to Ruth Curtis
Squire, subject to the provisions of the will, taken by the executor and
by Ruth Curtis Squire, respectively, to, and reserved by, the Superior
Court in New Haven County, *Webb, J.*, upon the facts alleged in the
reasons of appeal and in the answers thereto, for the advice of this court.
    The order of probate from which these appeals were taken, and the
facts involved, are fully stated in connection with the case seeking a
construction of the will.

    *George A. Clark* and *Harrison Hewitt*, for the Meriden Trust and Safe
Deposit Company, Executor.

    *Leonard M. Daggett* and *J. Dwight Dana*, with whom was *John W.
Bristol*, for Ruth Curtis Squire.

    *Arthur L. Shipman*, for Agnes M. Church *et als.*

    PRENTICE, C. J.  The questions presented by these two appeals,
argued together and immediately following the argument of the prin-
cipal case, are largely technical in their character, and, in view of the
judgment to be rendered in that case upon our advice, their answer has

*Harrison Hewitt* and *George A. Clark,* for the plaintiff.

*Arthur L. Shipman,* for the defendants Agnes M. Church *et als.*

*Leonard M. Daggett* and *J. Dwight Dana,* with whom was *John W. Bristol,* for the defendant Ruth Curtis Squire.

*Francis T. Bennett,* for the defendant the Trustees of Donations and Bequests for Church Purposes for the Diocese of Connecticut.

*Frank S. Fay,* for the defendant St. Andrew's Parish of Meriden.

*Albert R. Chamberlain,* for the defendant the Curtis Memorial Library.

become of no possible practical importance. It having been determined that Ruth Curtis Squire is, by force of her grandmother's will, entitled to the property in the hands of the executor, to be held by her in absolute and unqualified ownership, the objections made by the parties appellant to the order of the Court of Probate directing the executor to hand over the property to her, and any incidental questions relating to details and procedure which are raised, have become of not the slightest moment. Consideration of them may, therefore, be passed over, and action by the Superior Court advised which shall in the simplest and most direct way lead to the result which has already been determined upon as the proper one. This will be accomplished by a modification and amendment of the order appealed from, in such manner that it shall recite fully and concisely the facts found upon which it is based, and in conclusion order the Meriden Trust and Safe Deposit Company to pay and deliver over to Ruth Curtis Squire the net estate held by it in the execution of the provisions of Mrs. Curtis' will, taking proper receipts therefor, and make return thereof to the Court of Probate.

The Superior Court is advised to modify the order of the Court of Probate in conformity with the suggestions above outlined.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.

PRENTICE, C. J. All the questions here at issue concern the testatrix's disposition of the residue of her estate, comprising by far the larger part of it. They arise out of the provisions of the seventh paragraph of her will, which is the only portion of that instrument which either concerns the disposition of the residue or throws light upon the testatrix's intentions therein. In its opening sentence, forming the whole of the main portion of the paragraph, she uses apt and unambiguous words of gift to her son George of one half of that residue, to vest in him in point of both right and possession and enjoyment immediately upon her death, thereby giving him an unqualified estate in fee simple in any real estate and an absolute estate in the personalty, and of gift to her granddaughter, Ruth Curtis Squire, of the remaining one half, to vest in her in point of right at her grandmother's death, and in possession and enjoyment when she should reach the age of twenty-one. *State* v. *Main*, 87 Conn. 175, 180, 87 Atl. 38. Pursuant to these provisions Ruth, upon her arrival at the age of twenty-one, would become vested with an unqualified fee in the real estate forming a portion of the one half which should be her share, and an absolute estate in the personal property. She has already passed her twenty-first birthday, so that the undoubted effect of the introductory portion of paragraph seven, if it stood alone, would be that at the present time she would be vested with an absolute and unqualified estate in the property comprising the fund in the plaintiff's hands.

An estate once given by will in absolute terms may, however, be cut down to a lesser one by subsequent provisions of the instrument clearly showing that it was the testator's intention to give such lesser estate. The subsequent language, to have that effect, must not be of doubtful meaning or uncertain in its indica-

tion of the testamentary intent, and be equivalent to a positive provision. *Clark* v. *Baker*, 91 Conn. 663, 666, 101 Atl. 9; *Strong* v. *Elliott*, 84 Conn. 665, 671, 81 Atl. 1020; *Mansfield* v. *Shelton*, 67 Conn. 390, 394, 35 Atl. 271.

The subsequent language relied upon in the present case as cutting down the gifts to both the son George and the granddaughter ʻRuth, to determinable or defeasible fees or estates, is that found in the two provisos immediately following that portion of the paragraph above noticed.

The first of these provisos has to do with Ruth's share alone. Its effect unquestionably was to cut down the estate she took in her share, in that it was made defeasible in case of her death at some time without leaving issue. Whether or not the condition of defeasance thus provided is one which now renders her title a defeasible one, depends upon the period of time within which her death without issue should occur to have the effect of determining her title. If, by her death, the testatrix meant her death whenever occurring, then her title is open to defeat down to the moment of her decease, which may not occur in the next three score years. If, on the contrary, the testatrix intended to provide for her youthful granddaughter's death without issue during some shorter period, and that period has already elapsed, then, the happening of the condition having become impossible, Ruth's title has become an absolute one, and the proviso has become as though it never was. *Friedman* v. *Steiner*, 107 Ill. 125, 131; 4 Kent's Commentaries, 9.

The testatrix failed to expressly state her intention as to when, or within what period of time, Ruth's death without issue should occur to accomplish the defeat of the estate given to her and the passing of it over to her uncle George, his heirs and assigns. Reading the sev-

enth paragraph down to this point and no further in the light of the circumstances surrounding the will, it would, however, not be difficult to discern that intention and the meaning she desired to be attached to the language she used. She had given the one half to Ruth with direction that the possession and enjoyment of it should be withheld from her until she should arrive at her majority. Ruth at the time was only twelve years old. Nine years would elapse before she could come into the possession and enjoyment of the property. Meanwhile, should she die, it might well be anticipated that she would die without issue. Under such circumstances, which readily might occur within George's lifetime, it was natural that the testatrix should wish that Ruth's share of the residue still in the hands of the executor be paid over and belong to George. If, on the other hand, Ruth should live out the allotted span of human life, the ultimate vesting of an indefeasible estate would be postponed for three score or more of years. George, who at the time of the execution of the will was a man over fifty years of age, would then be dead. His only child, older by a number of years than Ruth and old enough to be married two years later, would probably not be alive, and her children, born respectively in 1911 and 1914, and any child or children they might have, might not be surviving. In such case—not out of the ordinary course of nature—the benefit to be derived from a termination of Ruth's estate, would first enure to persons five, or conceivably six, generations removed from the testatrix. Considering these circumstances and looking at the will no further than the first proviso, it would be hard to believe that the testatrix intended to make a disposition of her property which might easily lead to such results, and much more reasonable to believe that her intention was to confine the operations of the de-

feasance clause, embodied in the first proviso, to the period during which the property was to remain in the hands of the executor awaiting Ruth's arrival at full age. In aid of this conclusion would be the familiar principles of law that the law favors the early vesting of estates, prefers the first to the second taker, and looks with disfavor upon defeasance provisions. *Carpenter* v. *Perkins*, 83 Conn. 11, 16, 74 Atl. 1062; *Cody* v. *Staples*, 80 Conn. 82, 85, 67 Atl. 1; *Eaton* v. *Eaton*, 88 Conn. 269, 277, 91 Atl. 191. In support of this construction see also *Donnell* v. *Newburyport Homeopathic Hospital*, 179 Mass. 187, 189, 60 N. E. 482; *Gerting* v. *Wells*, 100 Md. 93–97, 59 Atl. 177; *Colby* v. *Doty*, 158 N. Y. 323, 327, 53 N. E. 35; *Huff* v. *Browning*, 96 Ill. App. 612, 616.

There then remains for consideration the second proviso, whose provisions, not happily conceived and couched in unfortunate language, furnish the occasion for most of the questions, and the most perplexing ones, which gather about the instrument. This proviso concerns not only the share given to Ruth, but also that given to George. It provides for the gift over of the whole residue in a certain event which, by necessary implication, carries with it a determination of the estates previously given to both Ruth and her uncle George.

As far as the direct effect of this proviso upon the titles by which the residue of Mrs. Curtis' estate is now held is concerned, that question, which under other conditions might possess large importance, may now be dismissed. Ruth having survived her uncle and he having died leaving issue, the conditions fixed by the proviso as those upon the happening of which there should be a defeat of the prior gifts, have become impossible of existence. These conditions were (1) that Ruth should die without surviving issue, and (2)

that her uncle should not then be living and should have died leaving no lawful issue or descendant thereof. The accepted rule of construction in this State is, that in the absence of express direction or other indication of testamentary intent to the contrary, the phrase "dying without issue" or its equivalent shall be taken to mean dying without issue living at such death. *St. John* v. *Dann*, 66 Conn. 401, 407, 34 Atl. 110; *Hudson* v. *Wadsworth*, 8 Conn. 348, 360. That the testatrix's language itself fully harmonizes with that construction is apparent.

It results from these considerations (1) that nothing of right, title or interest in the residue of Mrs. Curtis' estate can ever pass to the donees in the remainder named in the second provision, or to any one of them; (2) that the title by which George held his half of the residue became absolute and indefeasible immediately upon his death; and (3) that the title which Ruth has to the property in the plaintiff's hands, representing the other half of the residue, is not made determinable by the direct operation of any provision of the second proviso.

This latter proviso, however, may not be dismissed thus summarily. Although the time has come when by its direct operation it cannot by possibility have effect upon the titles by which, pursuant to the prior provisions of the will, the residue estate is owned and held, its contents are to be considered in connection with those prior provisions, in arriving at the testatrix's meaning and intent therein, in so far as it may be hidden in uncertain or ambiguous language. We have, then, to revert to the first proviso and to extend our consideration of its uncertain language, which has thus far ignored the presence of the second, to include such further indications of the testatrix's intent as the latter may suggest.

Counsel for the defendants whose interests are opposed to those of Ruth, exclusive of those named in the second proviso as donees in remainder, point to the language of the second proviso where the first condition of defeasance is stated to be the decease of Ruth "without lawful issue or descendant thereof living at the time of her decease," and argue forcibly that here is a plain indication that Mrs. Curtis was looking forward to and providing for a determination of the titles given to Ruth and George at some time farther removed than the nine years which would bring Ruth to her majority. This passage, and the inferences drawn therefrom, are the main reliance of those parties whose counsel press it upon our consideration as affording convincing proof that the testatrix in both her provisos was providing for a determination of the absolute estate once given in terms to Ruth, in the event of her death without issue whenever it should occur.

There can be no doubt that the language thus relied upon, if used with full appreciation of its natural import, is well calculated to convey the idea of a longer outlook than nine years, but the deductions sought to be drawn from that fact, as applicable to the first proviso, require the satisfactory establishment of two propositions, to wit: (1) that the testatrix in both the first and second provisos had reference to the same point of time; and (2) that the considerations arising from the use in the second, of the words "or descendant thereof," are sufficient to outweigh those to the contrary otherwise appearing, so that all things taken into account it is clearly apparent that the testatrix intended to make the estate once given to Ruth in absolute terms defeasible in the event of her death at any time without leaving issue.

The first of these propositions is a debatable one, to say the least, since the testatrix has described the two

contingencies in different language. In the first proviso it is expressed to be the death of Ruth without lawful issue then living; in the second, as the death of Ruth without lawful issue or descendant thereof living at the time. In so far as the language is concerned, two very different contingencies may have been intended, to wit, in the one case the failure of immediate issue, and in the other failure of issue in any degree. *Hoadley* v. *Beardsley*, 89 Conn. 270, 277, 93 Atl. 535.

If it be assumed that such was not the case and that both provisions are referrable to the same point of time, there is yet a failure to make it clear that that point of time was one postponed to Ruth's death whenever occurring. We have already had occasion to notice some cogent considerations against the intentional suspension of the vesting of an absolute title for so long a period as would be quite possible under such a construction. The second proviso furnishes others. It will be noticed that it contains no cross remainder in favor of Ruth, should her uncle die before her and without issue. Nowhere in the will is to be found such provision or other disposition of his share in such event. Would his heirs, legatees or devisees, and their successors in title, take subject to their being deprived of the property at some time possibly many years in the future when Ruth should die? The general scheme of the will evidently looks to the treatment of the two branches of the testatrix's family, each represented by one person, with substantial equality. The tender years of one was a fact which called for recognition and appropriate provision. If the contention of those who are opposed to Ruth's claim to her share in absolute ownership, be accepted, the possibility of a wide distinction is created between what she and her uncle received, and a distinction which, as events have transpired, would be a very real one. If the period during

which these possibilities might take form in actualities be reduced to the nine years of Ruth's minority, they would become of little moment, but if that period be stretched out to cover a half-century or more, they would assume very different proportions and involve many perplexing problems liable to arise. It cannot be lightly assumed that the testatrix, without apparent reason, intended to make a testamentary disposition so full of possibilities of inequalities and of legal complications and perplexities innumerable. *White* v. *White,* 52 Conn. 518, 522. We are convinced that the strong preponderance of reasons is in favor of the construction of the first proviso which limits its operation to the period of Ruth's minority. Certainly it is at least far from clear that the testatrix intended thereby to cut down the absolute estate previously given to her to the extent contended for.

The Superior Court is advised to render judgment adjudging:—

(1) That the title of George M. Curtis to the one half of the residue of the testatrix's estate distributed to him became absolute and indefeasible immediately upon his decease and thereupon became vested absolutely and unqualifiedly in his estate. (2) That Ruth Curtis Squire now has the absolute title to the remainder of said residue and by the terms of the will is entitled to receive the same from the plaintiff. (3) That the legatees and devisees in remainder named in the second proviso of the seventh paragraph of the will have neither right, title or interest in any portion of the residue of the testatrix's estate, and can take nothing by force of the provisions of said seventh paragraph.

No costs in this court will be taxed in favor of any of the parties.

In this opinion the other judges concurred.